## SHORE et al. v. UNITED STATES.
### No. 5216.

Court of Appeals of District of Columbia.

Argued March 3, 1931.

Decided April 6, 1931.

Rehearing Denied April 25, 1931.

Wm. E. Leahy and James F. Reilly, both of Washington, D. C., for appellants.

Leo A. Rover and Harold W. Orcutt, both of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ and GRONER, Associate Justices.

GRONER, Associate Justice.

The United States attorney on the 8th of May, 1929, filed a bill of complaint on the equity side of the Supreme Court of the District of Columbia against appellants, whom we shall hereafter call defendants, charging them, and one Mae Money, pursuant to sections 22 and 23 of title 2 of the National Prohibition Act (27 USCA §§ 34, 35), with maintaining a public and common nuisance in the premises No. 1223 New York Avenue N. W., Washington, D. C., and praying for the abatement thereof, and for a temporary, and at the final hearing a permanent, injunction restraining defendants from moving, storing, or having possession of contraband liquor thereon. The lower court issued an injunction pendente lite. In November, 1929, the United States attorney filed an information in contempt alleging that, after the issuance of the order and the service thereof, the defendants Frank Shore and Mae Money violated its terms, in that at various times, while it was in full force and effect, they had kept and possessed, on the premises named, large quantities of intoxicating liquors. The defendants, respectively, answered the bill of complaint, and filed motions to quash certain search warrants issued January 28, May 3, and November 16, 1929, and also to have returned certain quantities of liquor seized as the result of the issuance of the warrants, and to suppress the use of the same in evidence. There was a hearing in February, 1930, at which evidence was taken, and, as a result of which, the court entered a final decree padlocking the premises, continuing the injunction as against Shore and Hall, and adjudging defendant Shore in contempt, and committing him to prison for the period of one year.

The main grounds assigned as error go to the question of the validity and legality of the several search warrants, to the failure of the court to suppress the evidence, and to the refusal of the court to compel a government witness on cross-examination to disclose the source of confidential information which he had stated on direct examination he had as to the conduct of defendant Shore in selling liquor on the premises. The point made against the search warrants is that they failed particularly to describe the place that was, to be searched, and were issued without probable cause.

The premises to be searched, as described in the three warrants, were "the premises of one Frank Shore, said premises being

described as 1223 New York Avenue Northwest and being within the District of Columbia," and it is now insisted that this was not sufficient, because the premises thus described consisted, not only of defendant Shore's garage and tire shop, but also of a small lunch room occupied by some one else, but which also bore the same number on a separate front door or entrance. Some further point was made of the fact that the third story of the building was occupied as to two of the rooms, one by Shore and another by the defendant Money. It is admitted on the record that the defendant Shore owned the whole building, and it satisfactorily appears that neither the lunchroom nor the upstairs was searched.

We think the description in the warrant sufficiently identified the premises to be searched. The house which the warrant ordered searched was the property of the defendant Frank Shore, and was identified as No. 1223 New York Avenue Northwest, in the city of Washington. The house searched was the house of Frank Shore at the designated number in the designated street. To say now, as we are asked to say, that the warrant is defective because there was on the premises a lunchroom with the same street number, but which it was not intended to search and which was not searched, would be to indulge in behalf of an admitted lawbreaker those protective provisions of the amendment intended to be invoked only in behalf of one whose rights of person or property had been invaded contrary to its provisions. We think the defendant Shore cannot complain if, as the Supreme Court puts it, the description in the warrant is such that the officer can with reasonable effort ascertain and identify the place intended to be searched. Steele v. U. S., 267 U. S. 498, 45 S. Ct. 414, 69 L. Ed. 757. As we have already seen, the warrant in question declared that the place to be searched was the premises of Frank Shore at a given number in a given street, all of which correctly described Shore's place. That there happened to be a small restaurant in a corner of the same building, wholly separated from the balance of the premises and occupied and used by another, though similarly numbered, would not, we think, have created such confusion as would have led astray any officer in the exercise of reasonable care, but since, as we have also seen, the restaurant was not searched, even if it be conceded that the warrant gave the right of search, its inclusion in no wise prejudiced defendants, or

violated their constitutional rights, and hence they may not complain. Chicco v. U. S. (C. C. A.) 284 F. 434; Shields v. U. S., 58 App. D. C. 215, 26 F.(2d) 993; U. S. v. Silverthorne (D. C.) 265 F. 853.

But it is also insisted that, even if the several warrants were sufficient in describing the premises, they were invalid because issued without probable cause. "Probable cause," as defined by the Supreme Court, is "reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the party is guilty of the offense with which he is charged." Dumbra v. U. S., 268 U. S. at page 441, 45 S. Ct. 546, 548, 69 L. Ed. 1032.

On this point we are not passing on the guilt or innocence of a person charged with crime, but only whether a reasonably cautious person, on the strength of the then known facts, would have believed that the Prohibition Law was being violated on the premises proposed to be searched. In this aspect, the facts to be noticed may be stated as follows: Prohibition agents received information on January 27 that two suspicious looking trunks consigned to one Willoughby, in care of one Shore at 1223 New York Avenue N. W., Washington, were being held at the express company's office. The agents went to the express office, and saw the trunks, and observed that they were shipped from Florida. They watched the trunks for about twenty-four hours, thinking perhaps some one would call for them, but, when this was not done, they moved the trunks and shook them, and could hear "a gurgle" and the sound of the movement of straw, which indicated to them that they contained liquor. The seals on one of the trunks being broken, they applied a key and opened it, and found it to contain whisky; whereupon they arranged with the express company to deliver the trunks at the premises in New York avenue to which they were consigned, and this was done. The officers, meanwhile watching, observed defendant Hall receive the trunks and help take them into the premises. They thereupon obtained a search warrant, served it on defendant Shore while defendant Hall was on the premises, and, upon opening the trunks, found them to contain a large quantity of liquor, and, upon search of other parts of the ground floor of the premises, found additional liquor there. At the time the search warrant was served, defendant Shore stated to the agents that he did not know Willoughby, to whom the trunks were

consigned, and had no connection with either. Neither of the defendants then or later claimed property in the liquor or the trunks. It is perfectly clear, therefore, that whatever may be said with relation to the right of the agents to examine the contents of the trunks in the office of the express company without a search warrant, or without any more reliable information of the presence therein of contraband than the "gurgle" they testified they heard, neither of appellants may complain, for the simple reason that, since they do not claim property in the liquor or the trunks, no constitutional rights of theirs were invaded. The guaranties of the Fourth and Fifth Amendments, as we have seen, were intended for the benefit of the person whose rights have been transgressed, but this right is personal, and may not be availed of to protect one who claims no ownership in or right of possession of the goods seized, and so we held in Shields v. U. S., supra, that such a person is not in a position to challenge the validity of the warrant or to ask a return of the property of a third person. In this view, the proposition is perfectly clear that the officers were entirely within their rights in securing the search warrant, and that the grounds on which it was obtained were ample to sustain it. They had seen in the express office trunks containing whisky. They followed them to defendant's place of business, saw them delivered to one of the defendants, and brought by him into that place. They not only had a right to believe, but they knew, that the Prohibition Law had been violated, and it thereupon became their duty to seize the offending thing, that the guilty parties, whoever they might be, should be brought to justice. Any other course than that pursued would have made a mockery of the law.

 What we have already said with relation to the validity of the search warrant of January 28 applies more or less to the other two. All were identical in form, and differed only in the circumstances of their issue. In the one of May 3, the officers, who, as we have noted, had every reason to believe that the premises of the defendant Shore were being used as an illegal dispensary of contraband liquor, watched from the rear, and saw persons leaving with wrapped packages having all the earmarks of bottles of liquor. One of these persons—the same who had helped unload and take into the premises the liquor laden trunks—was followed, and, when he paused in a lane, was asked by the officers to hand over his liquor, which he did

without protest, and likewise, without constraint of any kind, in reply to the question where he had got it, stated, "Down at Frank Shore's." This, we think, was enough on which to base the warrant. And so likewise on November 16, when the officers had sent a policeman, as they had a right to do, into the ground-floor room occupied by Shore as a public garage, who, without any other search than the use of his eyesight, saw unconcealed whisky in several places, enough was shown, we think, to justify the warrant of that date. Indeed, this flagrant violation of both the law and the court's order, in a place in which the public generally were invited and expected to come, showed such contempt of the injunction as to make us wonder how the officer's subsequent action in swearing out the warrant can be seriously urged as an invasion of defendants' rights.

We have made a painstaking examination of the record, and we find no evidence of an abuse of power, or the suppression or infringement of defendants' legal rights. It presents, rather, the not unusual picture of the persistent lawbreaker seeking on technical grounds to avoid the penalty of his offense, and we think it not untimely to say that in such circumstances we do not regard our duty to require us to exercise our ingenuity to assist in the accomplishment of that result. While we shall not abate one jot or tittle of our energy now and always to preserve entire those rights which are our common inheritance, we shall nevertheless feel that we have done our full duty if we seek to find and uphold their real spirit and intent, and thus to preserve them, rather than, by distorting their purpose and meaning, to translate them into a sanctuary for lawbreakers. However strong the opinion of many may be to the contrary, ours is still a government of laws, and the right to participate as an elector in the making of the laws no more now than at any other time gives the right to break the laws, and in the recognition of this fact by the people generally, we are convinced, lies the only safe path in the perpetuation of government.

 The remaining points do not impress us any more seriously. Obviously, the whisky having been legally seized, as we hold, it was proper to retain it as evidence, and the suggestion that an officer receiving confidential information of an alleged violation of the law should be required to disclose the name of his informant has been decided to the contrary. Vogel v. Gruaz, 110 U. S. 311, 4 S. Ct. 12, 28 L. Ed. 158; Segurola v. U.

S. (C. C. A.) 16 F.(2d) 563, and the cases cited there. But, without regard to this principle, defendants may no more complain of the action of the court in refusing to require this fact to be disclosed than could defendants in the Segurola Case, supra, for the information thus obtained by the police furnished only the impulse for the act—the watch and search. The information itself was not used as evidence of guilt, and the fact of guilt itself is really not denied, and, if the uncontradicted evidence of the officers is believed, the defendant Shore intends to persist in his unlawful career. To have required, under these circumstances, that the name of the informant should be disclosed, would merely have gratified his curiosity or his vengeance, whichever was most involved, without affecting in any way the pending question before the court.

Affirmed.