Cecil JONES, Appellant,

v.

UNITED STATES of America, Appellee.

No. 14437.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 9, 1958.

Decided Dec. 19, 1958.

Petition for Rehearing Denied Jan. 20, 1959.

Bazelon, Circuit Judge, dissented.

---

Mr. Herbert S. Marks, Washington, D. C. (appointed by this Court) for appellant.

Mr. Walter J. Bonner, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, DANAHER and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

Appellant was indicted, tried and convicted of violation of the federal narcotics laws. (26 U.S.C. § 4704(a); 21 U.S.C.A. § 174.)

The record shows that on August 20, 1957, Detective Didone of the Narcotics Squad, Metropolitan Police, received reliable information involving appellant in illicit narcotics traffic, and that a ready supply of heroin was being kept in Apartment 36, 1436 Meridian Place, N. W. The next day, August 21, Detective Didone obtained from the United States Commissioner a search warrant covering the above apartment. At approximately 5:00 p. m. on the latter day, the detective and three other officers went to the, said premises to execute the search warrant. While one officer remained outside the premises, Didone and the other two officers went to Apartment 36 and knocked on the door. When the occupants failed to open the door in response to knocking, a janitor was summoned to the door at appellant's request. When the janitor spoke to appellant, the door was opened some three or four inches, a night chain being still attached on the inside of the door. Didone thereupon identified himself and told appellant that they had a search warrant for the premises. Appellant immediately turned and went back toward a bathroom. At that point the police officer had plainly identified himself and announced his purpose. Upon being refused admission, and with the door still partly open, Didone pulled the night chain loose, and he and the other officers entered the apartment. Besides appellant, the officers found four known drug addicts in the apartment.. A search of the apartment revealed heroin and narcotic paraphernalia (a small package containing three hypodermic needles and syringes, a bottle-top cooker and one tourniquet.) Appellant was placed under arrest.

An indictment was returned against appellant and he (pro se) filed a motion to dismiss. This motion alleged that "the place of arrest is not his home although he has stayed there before, which gave no grounds to believe that property not in his possession and not having marks of personal identification, belonged to [appellant]." Thereafter, appellant's assigned counsel filed a motion to suppress

evidence. After oral hearing, the District Judge denied the motions, pitching his decision on the ground of lack of standing. Appellant was later tried and convicted. At the trial, the motion to suppress was again urged and rejected. This appeal followed.

■ Appellant claims that the District Court erred in holding that he had no standing to contest the entry, and urges that the seizure of the narcotic was unlawful. The Government contends that appellant lacks standing since no right of appellant protected by the Fourth Amendment was violated as he made and makes no claim to ownership or right to possession of the premises or of the seized property. Under the Fourth Amendment, in order for an accused to have standing to prevent the admission of evidence which he thinks was obtained by an unlawful search and seizure, his personal rights must have been infringed upon. Speaking on this subject in Jeffers v. United States, 1950, 88 U.S.App.D.C. 58, 60, 187 F.2d 498, 500 affirmed, 1951, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59, this court stated:

> "The constitutional provision against unreasonable searches and seizures does not in terms bar the admission of evidence obtained by its violation. The exclusionary rule as applied in the federal courts was formulated by the judiciary in aid of the effectiveness of the Amendment (citing cases) but is available only to the victim of the unconstitutional conduct. ‘ * * * the federal courts in numerous cases, and with unanimity, have denied standing to one not the victim of an unconstitutional search and seizure to object to the introduction in evidence of that which was seized. * * *’ (Citing cases.)"

The court went on to reiterate the established rule:

> "‘ * * * the settled doctrine is that objection to evidence obtained in violation of the prohibitions of that [Fourth] Amendment may be raised only by one who claims ownership in or right to possession of the premises searched or the property seized, * * *’ [citing cases]." 88 U.S.App.D.C. at page 61, 187 F.2d at page 501.

Unlike Jeffers, who claimed ownership of the property which had been seized unlawfully, even though the premises searched were not his, this appellant has consistently disclaimed ownership of both the property seized and the premises searched. He testified at the hearing on the motion that the property seized was not his and that "the place of arrest is not his home, although he has stayed there before." He further testified that the apartment belongs to a friend of his, one Arthur Evans, and that Evans gave him the key to the apartment, to use free of charge while Evans was out of town.

■ Appellant, in his motion to suppress, alleges he was only a guest or an invitee in the apartment. This court has expressly held that a guest in an apartment said to have been illegally entered, and in which no interest is claimed by the guest, lacks the required standing. Gaskins v. United States, 1955, 95 U.S. App.D.C. 34, 218 F.2d 47. See also Washington v. United States, 92 U.S.App.D.C. 31, 202 F.2d 214, certiorari denied, 1953, 345 U.S. 956, 73 S.Ct. 938, 97 L.Ed. 1377; Gibson v. United States, 1945, 80 U.S. App.D.C. 81, 84, 149 F.2d 381, 384; Shore v. United States, 60 App.D.C. 137, 49 F.2d 519, certiorari denied 1931, 283 U.S. 865, 51 S.Ct. 656, 75 L.Ed. 1469. Since appellant's personal rights were not violated, he has no standing to contend that the entry and subsequent seizure were unlawful.

■ Assuming *arguendo*, however, that we were willing to accept appellant's theory as to his standing, it does not follow that the court should have suppressed the material seized on the premises. The statute[1] permits police to

---

1. 62 Stat. 820 (1948), 18 U.S.C. § 3109 (1952), quoted infra in the dissenting opinion.

"break open any * * * door * * part of a house * * * to execute a search warrant, if, after *notice* of his authority and purpose, he is refused admittance * * *." [Emphasis added.] There is abundant evidence, even though it is disputed by appellant, that the officer showed his official identity card through the crack in the door and told appellant he was there to execute a search warrant.[2]

It is not unusual for persons accused to dispute police versions of what occurred on a search, seizure or arrest— especially when the accused is found in possession of articles like narcotics, which are incriminating *per se*. Like any other fact or credibility question, such dispute must be resolved by the trier of fact upon the testimony. After it has been resolved adversely to the accused, as it was here, it follows logically that he has a heavy burden to persuade an appellate court to the contrary.

Our dissenting colleague agrees that we must accept as true and reliable the testimony of the police; but we cannot agree with him that the Government's version of the case "shows a persistent course of conduct by police to conceal rather than reveal their 'authority and purpose,' and to gain entry without giving any semblance of the notice required by statute." We think the police performed their duties properly and in accordance with law. The statute does not call for the vocal announcement "Police"; it requires "notice of his authority and purpose." There was neither "fictive compliance" with the statute nor "much too little and much too late," but compliance in every respect. The difference between notice by eye and notice by ear is indeed a thin reed on which to lean, especially where the very proper guilty verdict was based on conclusive evidence.

We have examined the other points raised by appellant and find no error.

Affirmed.

BAZELON, Circuit Judge (dissenting).

In executing the search warrant, I think the police violated both the letter and the spirit of 18 U.S.C. § 3109, which requires them to give notice of their authority and purpose before breaking into the premises to be searched.[1] Hence, admission of the evidence obtained thereby is reversible error.

At trial, there was sharp conflict as to the manner in which the warrant was executed. The police testified that they knocked on the door of the third-floor apartment designated in the warrant, but remained mute to the several inquiries of defendant as to who was there; that the defendant then went to the bathroom window and shouted, without response, to the plain-clothes policeman stationed in the street below to bring the janitor because someone was at his door and would not go away; that the janitor was obtained, the police again knocked, and, when inquiry was again made as to who was there, they specified "janitor"; that defendant then opened the door part way; that one of the police officers then placed his wallet identification in the opening of the door and stated he had a search warrant, but pushed his way in when defendant "tore" away towards the bathroom.

Defendant's story differed materially. He testified that instead of remaining mute, the police answered his inquiries of "Who's there" with "Jim, Jack open up"; that when he shouted to the plain-clothes man to get the janitor, the plain-clothes man told him to open the door and see who was knocking; that when he

---

2. Thus, cases such as Woods v. United States, 1956, 99 U.S.App.D.C. 351, 240 F.2d 37, certiorari denied 1957, 353 U.S. 941, 77 S.Ct. 815, 1 L.Ed.2d 760, do not here apply.

1. 62 Stat. 820 (1948), 18 U.S.C. § 3109 (1952):

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

commenced opening the door for the janitor, the police immediately pushed in and only later announced themselves and served the warrant.

Nothing in the record indicates that this conflict in the testimony was either considered or resolved in the court below. For present purposes, I accept the Government's version. It plainly shows a persistent course of conduct by police to conceal rather than reveal their "authority and purpose," and to gain entry without giving any semblance of the notice required by statute. The long-delayed and last-ditch notice described by the police was no more than fictive compliance. It was much too little and much too late.[2]

That defendant had standing to seek suppression of the evidence gained by the illegal entry was settled by this court in Woods v. United States, 1956, 99 U.S. App.D.C. 351, 240 F.2d 37, certiorari denied 1957, 353 U.S. 941, 77 S.Ct. 815, 1 L.Ed.2d 760, reversing in part, United States v. Bell, D.C.D.C.1955, 126 F.Supp. 612. There we held that standing to raise a § 3109 violation runs not only to the occupant of the premises violated by an illegally forceful entry, but also to those present on the premises when such a violent entry occurs. The majority does not distinguish between standing to suppress evidence obtained by a search or arrest in violation of the Constitution, and standing to suppress evidence obtained through violation of § 3109. Whatever may be the limitations on standing to claim the constitutional privilege, see note 5 *infra,* they are inapplicable to § 3109.

Although the § 3109 violation was not urged below as a basis for suppressing the evidence, I think the admission is plain error which we are authorized to notice under Rule 52(b), Fed.R.Crim.P., 18 U.S.C.A.[3] Not only were the circumstances of the entry aggravated, but the sole evidence upon which conviction could have been based was obtained as a result of the illegal entry. We are not advised why this issue was not raised at trial by counsel assigned below (as distinguished from present counsel appointed by this court). But I submit that it may be related to counsel's statement to the trial court that he was too burdened at the time of trial properly to prepare his case and that he had misgivings about the adequacy of his presentation.[4]

2. As this court stated in McKnight v. United States, 1950, 87 U.S.App.D.C. 151, 152, 183 F.2d 977, 978: "To execute the warrant * * * there was no necessity to break open doors; or, what comes to the same thing for legal purposes, none but what the officers themselves created.` * * * Neither policemen nor private citizens can justify breaking into a house, or other violence, by deliberately creating an alleged necessity for it."

The holding in the McKnight case is not directly applicable to the circumstances disclosed below. The entry in McKnight took place pursuant to the putative authority of an arrest warrant, whereas the entry at bar was pursuant to a search warrant and is therefore governed by 18 U.S.C. § 3109. However, in this case as in McKnight, had the police officers in the first instance taken those steps which were required, there might have been no necessity for the breaking subsequently ensuing.

See Gatewood v. United States, 1953, 93 U.S.App.D.C. 226, 228, 209 F.2d 789, 791, where, citing Gouled v. United States, 1921, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647, this court again declared: "Entry by stealth can, of course, be as unlawful as entry by illegal use of force." And see Miller v. United States, 1958, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed. 2d 1332; Accarino v. United States, 1949, 85 U.S.App.D.C. 394, 179 F.2d 456.

3. See, e. g., Pinkard v. United States, 1957, 99 U.S.App.D.C. 394, 240 F.2d 632; Simmons v. United States, 1953, 92 U.S. App.D.C. 122, 206 F.2d 427; Tatum v. United States, 1951, 88 U.S.App.D.C. 386, 190 F.2d 612.

4. "Finally, I want it put in the record that since this is an assigned case that I have been almost every day in this Court. This fellow is confined in the jail and I can visit him from nine until three, and from nine until three I was up here so if I did not have a better preparation or more requests, I have had no opportunity."

Since I think the evidence must be excluded because of the illegal execution of the search warrant, I find it unnecessary to consider the validity of the warrant and defendant's standing to challenge its validity.[5]

And, although defense counsel had argued a motion in the case several weeks prior to trial, there exists on the record his unexplained statement, made at the end of the trial: "I certainly did not know anything about this case until yesterday afternoon."

5. On the question of standing, cf. my dissenting opinion in Christensen v. United States, 1958, 104 U.S.App.D.C. ——, 259 F.2d 192, 193. In this regard, I note in passing that the trial judge considered himself bound by the pretrial decision on the motion to suppress. But see Gouled v. United States, 1921, 255 U.S. 298, 313, 41 S.Ct. 261, 65 L.Ed. 647.