Cecil **JONES**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 16592.

United States Court of Appeals
District of Columbia Circuit.

Reargued April 3, 1962.

Decided by Judgment Entered
April 12, 1962.

Opinion Rendered May 3, 1962.

Mr. Charles F. Warren, Washington (appointed by this court) for appellant.

Mr. Frank Q. Nebeker, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Nathan J. Paulson, Asst. U. S. Atty., were on the brief, for appellee. Messrs. Charles T. Duncan, Principal Asst. U. S. Atty., and Abbott A. Leban, Asst. U. S. Atty., also entered appearances for appellee.

Before WILBUR K. MILLER, Chief Judge, and EDGERTON, PRETTYMAN, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges.

DANAHER, Circuit Judge.

The Supreme Court held [1] that this appellant had "standing" to challenge the sufficiency of a search warrant, but re-

1. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), reversing 104 U.S.App.D.C. 345, 262 F.2d 234 (1958).

manded the case to the District Court to consider the contention, not previously there raised, that the search warrant had not been executed in conformity with the statute.[2] The District Judge before whom the case had been tried conducted a hearing. He found as a fact and concluded as a matter of law that the warrant had been properly executed. The background for this appeal follows.

On August 21, 1957, Detective Didone of the Narcotics Squad, Metropolitan Police, accompanied other officers to apartment No. 36 at 1436 Meridian Place, N. W. in the District of Columbia in order to execute a search warrant. After entering the apartment, Didone arrested the appellant and four other narcotics users. The appellant was later indicted, charged with the possession of narcotics. The Government opposed his motion to suppress, contending that since Jones did not claim ownership of the evidence seized or had not alleged an interest in the premises searched, he had no "standing." After a pretrial hearing the late Chief Judge Laws so found. Thereafter the case came on for trial before Judge Holtzoff who refused to review the ruling of Judge Laws.

At the trial, Detective Didone testified that when he reached apartment No. 36, he knocked on a wooden door in which was a panel of frosted glass. He observed "an image shadow on the other side of the door." The person inside asked "Who's there?"[3] The officer re-mained silent but knocked again. Once more the voice asked "Who's there?," and Didone said nothing. He saw "the shadow fade away and walked away from the door." He heard the voice of Jones as the latter, from somewhere inside, cried out: "Call the janitor, there is someone at my door and he won't go away."

We turn first to what occurred *inside* the apartment. Jones, it developed, had called out the window to a stranger outside, who was none other than Officer Bonaparte in plain clothes. Taking the stand in his own behalf at the trial, Jones testified:

"I told him to get the janitor and see who was at the front door." "A knock came on the door again and I said 'who is there?' and he said: 'It is the janitor.'

"Q. Then what happened?

"A. Then when I cracked the door it came on open.

"How many locks were on that door?

"A. There was three locks with the night latch.

"Q. Did you open any of the locks before you opened the door? A. I opened two.

"Q. Was the night latch on? A. The latch was on.

"Q. Do you mean a chain that goes from the sill to the door? A. Yes, sir."[4]

2. 18 U.S.C. § 3109, which reads:

"§ 3109. Breaking doors or windows for entry or exit

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

Practically verbatim, similar language appears in D.C.Code § 33–414(g) (1961) where it appears as part of "An act to effect the control of narcotics and dangerous drugs in the District of Columbia, and for other purposes," 70 Stat. 609, 620 (1956).

3. If Didone had announced his identity and declared his purpose and had then been refused admittance, the officers might have broken down the door. Their entrance under such circumstances, despite the violence, would have been lawful. Accarino v. United States, 85 U.S.App. D.C. 394, 179 F.2d 456 (1949).

4. He denied ownership of three hypodermic syringes, three hypodermic needles, one bottle top cooker and a capsule of heroin. He admitted that he knew Detective Didone. He admitted that he was the same person who had been tried and sentenced on May 28, 1948 for the offense of receiving stolen property.

Meanwhile, out in the hall, as the officers heard Jones request that the janitor be summoned, Officer Fogle went to locate the janitor, who presently appeared at apartment No. 36. There Detective Didone identified himself to the janitor and told him "We had a search warrant for the premises," and directed the janitor to knock on the door. The janitor did so.[5] As the voice within repeated:

"Who's there?," Detective Didone remained silent but the janitor said "Janitor."

The door then was opened some three or four inches, but there was a night chain attached on the inside of the door. As the door was opened outward, Didone recognized Jones, and through the aperture the officer thrust his badge and also the search warrant. He said "I have a search warrant."

When the appellant saw the badge and the officer, he immediately turned around and ran directly back through a hallway to a doorway of the bathroom. Didone testified: "I then took hold of the door, pulled it open and the night chain slipped off." Jones was placed under arrest.[6] Thus the record stood when the case was last before us.[7]

Following remand, the case came on before the same trial judge. The prosecutor and defense counsel stipulated that the testimony given at the trial "shall be considered as part of the testimony" at the hearing. It was agreed that the appellant might call as his witness the

janitor, one Diggs, and that the appellant might further cross examine Detective Didone. The examination of Diggs went thus:

"Q. When you knocked did anybody inside say anything?

"A. Asked me who was I. Q. And what did you say?

"A. I told him I was the janitor. Q. And then what happened? A. Then he opened the door. Q. How far did he open the door? A. He had a chain on it, a chain link."

Appellant's counsel argued "that the course of conduct of the police, and the detective, prior to the time when they finally got the janitor to knock, represented an attempt to evade the requirements of Sec. 3109 by tricking the defendant into opening the door."[8]

The trial judge, refusing to credit the testimony of the appellant, observed that Jones "is a narcotic addict and is a convict and is a highly interested witness. The officer impressed the Court as a credible witness. I believe the officer." After colloquy with counsel Judge Holtzoff announced his findings and conclusions as follows:

"The Court believes the officer's testimony.[9] After all, enforcement of the criminal law is not a game of chess. It is not something that requires a set ceremonial. Section 3109 of Title 18 prohibits an officer breaking open a door or a window

---

5. The janitor knew the police had a search warrant. D.C.Code § 33-414(n) (1961), supra note 2, makes it an offense for "any person" knowingly and wilfully to obstruct or oppose any officer who is attempting to serve or execute a search warrant.

6. Four recognized narcotics users who were also in the premises were arrested as "vagrants," as defined in D.C.Code § 33-416a (1961), supra note 2.

7. So we ruled based upon the trial transcript that even if Jones could be said to have "standing," there was "abundant evidence" to demonstate that the warrant had been properly executed. Jones v.

United States, supra note 1, 104 U.S. App.D.C. at 348, 262 F.2d at 237.

8. Counsel pointed out that in a recent case decided "adversely to the contention I am making," certiorari had recently been granted, citing Leahy v. United States, 272 F.2d 487 (9 Cir. 1960). Certiorari was granted, 363 U.S. 810. 80 S.Ct. 1246, 4 L.Ed.2d 1152 (1960), but pursuant to Supreme Court Rule 60. the case was dismissed by stipulation, 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1961).

9. Of course, he was free to do so. Butler v. United States. 107 U.S.App.D.C. 225, 226, 275 F.2d 889, 890. rehearing en banc denied (1960); Jones v. United States, supra note 7.

or any part of a house in order to enter the house to execute a search warrant unless he first gives notice of his authority and purpose and then is refused admittance. Now, in this case, the janitor, at the behest of the officer, knocked on the door. The door was partially opened. The officer immediately identified himself by showing his credentials and stating that he had a search warrant. The defendant, who opened the door on a chain, immediately turned around and ran for the bathroom instead of admitting the officer. The officer pulled the chain off the door by putting his hand through the open space and entered.

"I think the officer was entirely within the law and within the proprieties. After all, the officer knew that he was entering a headquarters for the sale of narcotics. He feared, quite properly, that when the defendant was running for the bathroom he might have thrown some incriminating narcotics down the drain. I do not think the officer was under any obligation to accord that opportunity to the defendant.[10] In fact, if he had accorded it, I think he would have been guilty of dereliction of duty. I think he complied with the requirements of 3109. He identified himself, he showed the search warrant, and of course he acted very rapidly immediately after that in order to prevent the destruction of it.

"We have to remember that, after all, the officers are there to protect the community.

"I find as a fact and conclude as a matter of law that the warrant was properly executed in that the entry into the premises was not forced until after the officer identified himself, announced that he had a search warrant and he was not admitted."

Instead of resorting to permissible violence by breaking in the door, after announcement of identity and purpose and refusal of admittance,[11] the officers resorted to peaceful means of making known their authority and purpose. They stood by and let Jones open the door. Jones asked that the janitor be summoned, and accordingly he was. He truthfully identified himself. He did not say "Jones, this is the janitor, but if I were you I would make these officers break down the door. They have a right to do that if you, knowing that they are police with a search warrant, refuse to let them in."

It is now contended that the officers gained entrance to the apartment by stealth or subterfuge. By remaining silent—and allowing Jones to think that *only* the janitor was there—the police are said to have "tricked" the appellant.[12] But the Supreme Court has told us that "artifice and stratagem may be employed to catch those engaged in criminal enterprises."[13]

Were there fraud, as in Gatewood v. United States,[14] we would have a very different problem. In that case the Gov-

10. 18 U.S.C. § 2232 denounces as criminal the act of any person who before, during or after seizure of any property by any person authorized to make searches and seizures "in order to prevent the seizure * * * of any goods * * * destroys, or removes" the property. Cf. Abel v. United States, 362 U.S. 217, 238, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960).

11. In Miller v. United States where the officers had no warrant of any kind, "A few more words by the officers would have satisfied the requirement * * *." 357 U.S. 301, 309–310, 78 S.Ct. 1190, 2 L.Ed. 2d 1332 (1958).

12. Cf. Leahy v. United States, supra note 8, 9 Cir., 272 F.2d at 490.

13. Sorrells v. United States, 287 U.S. 435, 441, 53 S.Ct. 210, 77 L.Ed. 413 (1932); indeed, "Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer." Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); cf. United States v. Burgos, 269 F.2d 763 (2 Cir. 1959), cert. denied, 362 U.S. 942, 80 S.Ct. 808, 4 L.Ed.2d 771 (1960).

14. 93 U.S.App.D.C. 226, 228, 209 F.2d 789, 791 (1953).

ernment's evidence disclosed outright falsehood, followed by forceful entry as the officers inexcusably thus gained admittance to execute an arrest of a woman already in custody. Again, as in cases such as Gouled v. United States,[15] the courts have had no difficulty in perceiving a clear violation of the rights of the accused. In that case, an army intelligence officer, purporting to be a friend and business acquaintance, gained access to the office of the accused, and in his absence, without warrant of any kind, seized and carried away the defendant's papers. A search and seizure under such circumstances could not stand, the Court ruled.[16]

Here, however, the officers had a valid search warrant. Jones opened the door. The janitor who had been summoned at the request of Jones himself, simply had made it possible for the officers thereupon to identify themselves and make known their purpose. We conclude that there was no invalidating infirmity in the execution of the search warrant.

Affirmed.*

EDGERTON, Circuit Judge, whom BAZELON, FAHY and WASHINGTON, Circuit Judges, join, dissenting.

This court affirmed appellant's conviction of violating narcotics laws. Jones v. United States, 104 U.S.App.D.C. 345, 262 F.2d 234. The evidence consisted chiefly of narcotics seized by a policeman who had a valid search warrant. The Supreme Court vacated our decision and remanded the case to the District Court "to consider petitioner's contention under 18 U.S.C. § 3109 * * *." That section provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused ad-

mittance * * *." Jones v. United States, 362 U.S. 257, 272–273, 80 S.Ct. 725, 4 L.Ed.2d 697.

The District Court took testimony and found that a "janitor, at the behest of the officer, knocked on the door. The door was partially opened. The officer immediately identified himself by showing his credentials and stating that he had a search warrant. The defendant, who opened the door on a chain, immediately turned around and ran for the bathroom instead of admitting the officer. The officer pulled the chain off the door by putting his hand through the open space and entered." He "knew that he was entering a headquarters for the sale of narcotics." The court found that "the entry into the premises was not forced until after the officer identified himself, announced that he had a search warrant and he was not admitted."

I do not question any of these findings or the testimony that supports them. Also, I agree that when appellant turned and ran instead of admitting the officer, the officer was "refused admittance" within the meaning of the statute. In such circumstances the District Court's legal conclusion, that the search warrant was properly executed, would normally follow. But I think this conclusion does not follow in the special circumstances of this case. Undisputed testimony raises a question of law with which the District Court did not deal.

Although the officers themselves first knocked at the door, the janitor afterwards knocked "at the behest of the officer", as the District Court found. The janitor testified, and the officer did not deny, that the officer forced him to knock by threatening to arrest him. Both men testified that someone in the apartment asked who was there and that the janitor replied "janitor". The facts that appellant partly opened the door, and that

---

15. 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921); cf. Morrison v. United States, 104 U.S.App.D.C. 352, 356, 262 F.2d 449, 453 (1958).

16. Cf. Frank v. Maryland, 359 U.S. 360, 365, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959).

* The retirement of Senior Circuit Judge Prettyman became effective April 16, 1962. Prior thereto he concurred in the foregoing opinion and joined in the judgment of the court entered April 12, 1962.

he then ran instead of lifting the chain, show that the officer's stratagem led appellant to believe until he saw the officer that no one but the janitor was there. It is not disputed, and the government appears to concede, that this was the reason why appellant partly opened the door.[1]

In an entrapment case, the Supreme Court has said that "stealth and strategy are necessary weapons in the arsenal of the police officer." Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848. Another entrapment case, Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, is to the same effect. Stealth and strategy are common in legal as well as in illegal entrapment. Also in On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270, the Court approved the admission in evidence of incriminating oral statements that had been obtained by stealth and strategy. A former employee of On Lee entered his shop and got incriminating statements from him without disclosing the facts that the former employee had become a government agent and that he carried a transmitter which enabled another agent outside the shop to hear what On Lee said. The second agent's testimony was held admissible.

Though the government relies on those cases, I think they are not pertinent. They did not involve, and the present case does involve, seizure of tangible property in claimed violation of a constitutional right. In the On Lee case the Court expressly distinguished seizure cases. It said: "Petitioner relies on cases relating to the more common and clearly distinguishable problems raised where tangible property is unlawfully seized. Such unlawful seizure may violate the Fourth Amendment, even though the entry itself was by subterfuge or fraud rather than force. United States v. Jeffers, 342 U.S. 48 [72 S.Ct. 93, 96 L.Ed. 59]; Gouled v. United

States, 255 U.S. 298 [41 S.Ct. 261, 65 L.Ed. 647] (the authority of the latter case is sharply limited by Olmstead v. United States, 277 U.S. 438, at 463 [48 S.Ct. 564 at 567, 72 L.Ed. 944])." 343 U.S. at 753, 72 S.Ct. at 971. In the Gouled case the Court held that a search, and seizure of tangible property, following an entry "obtained by stealth" violated the Fourth Amendment. 255 U.S. at 305, 41 S.Ct. at 263. In Olmstead v. United States the Court limited that principle only in the sense that it refused to extend the principle to a case of wiretapping which did not involve either search or seizure. The Court said in Olmstead: "Gouled v. United States carried the inhibition against unreasonable searches and seizures to the extreme limit. Its authority is not to be enlarged by implication and must be confined to the precise state of facts disclosed by the record. A representative of the Intelligence Department of the Army, having by stealth obtained admission to the defendant's office, seized and carried away certain private papers valuable for evidential purposes. This was held an unreasonable search and seizure within the Fourth Amendment. A stealthy entrance in such circumstances became the equivalent to an entry by force. There was actual entrance into the private quarters of defendant and the taking away of something tangible. Here we have testimony only of voluntary conversations secretly overheard. The Amendment itself shows that the search is to be of material things—the person, the house, his papers or his effects. The description of the warrant necessary to make the proceeding lawful, is that it must specify the place to be searched and the person or *things* to be seized." 277 U.S. at 463–464, 48 S.Ct. at 567. Concerning a search for and seizure of property, Olmstead did not limit Gouled.

In the present case, as in Gouled, there was "actual entrance into the private quarters of defendant and the taking away of something tangible." It follows

---

sult of the stratagem used by" the officer.

that if 18 U.S.C. § 3109 were interpreted as meant to authorize the sort of entry that occurred here, the question would arise whether the Gouled principle applies, i. e., whether the officer's use of subterfuge or stealth in gaining entry made the search and seizure unreasonable and a violation of the constitutional rights of the accused.[2]

That the subterfuge substantially aided the entry, and so the search and seizure, seems clear. Because of the subterfuge, appellant partly opened the door. Because the door was partly opened the officer, as the District Court found, simply "pulled the chain off the door by putting his hand through the open space and entered." If appellant had not partly opened the door, the officer would have had to break the door in order to enter. And as the government's brief recognizes, "The practical difficulty in breaking a triple locked door which opens opposite to the direction of travel is self-evident." The subterfuge removed the practical difficulty.

The officer could have entered without subterfuge, but he chose not to do so. The premise that an entry by simply breaking in, after giving the necessary notice and being refused admittance, would have been legal is correct. But it does not support the conclusion that breaking in with the aid of subterfuge was legal. Moreover the officer might have been admitted without any breaking if he had simply announced his authority and purpose.

I think it unnecessary to decide whether the search and seizure were unreasonable. I think we should avoid that constitutional question by interpreting the statute as not intended to authorize the use of stealth or subterfuge in aid of entry. As I understand the terms of the Supreme Court's remand, it follows that the seized evidence should have been excluded and that appellant's conviction should be reversed.

---

**2.** This question would arise whether or not the officer, had he been obliged to wait until he could break through the door, would have been too late to prevent appellant from flushing the narcotics down the drain.