**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Alfred J. POPPITT and Veronica R.**
**Poppitt, Defendants.**

**Cr. A. Nos. 1554, 1556.**

United States District Court
D. Delaware.

March 6, 1964.

William J. Wier, Jr., Asst. U. S., Atty., Wilmington, Del., for plaintiff.

James F. Kelleher, Wilmington, Del., for defendants.

STEEL, District Judge.

The question for decision is whether property seized by federal officers under a federal search warrant can be used against defendants in a federal court trial for the violation of a federal statute.

Defendants Alfred and Veronica Poppitt, husband and wife, were charged by separate informations with the commission of a misdemeanor, i. e. accepting wagers without paying the special tax required by 26 U.S.C. § 4411, in violation of 26 U.S.C. § 7203. The cases have been consolidated for trial.

Veronica was arrested in her home at 707 Lore Avenue in New Castle County, Delaware. The arrest was made by Harold J. Maloney, a special agent of the Internal Revenue Service, under an arrest warrant. Immediately following the arrest, Maloney, and other federal officers who accompanied him, acting under a search warrant, seized twenty-six bet sheets and other writings and articles, appearing to relate to numbers and horse betting activities. Alfred was not at home at the time.

Defendants have moved under Rule 41 (e) to suppress the seized property as evidence, and to have it returned to them, for the alleged reason that "there was not probable cause for believing the existence of the grounds on which the [search] warrant was issued."

The motions were supported and opposed by affidavits. They have been the subject of two hearings. At the first, two arguments were advanced by defendants: (1) the affidavit upon which the warrant issued failed to show probable cause for its issuance, and (2) the warrant was issued before the supporting affidavit was executed. Both points were resolved against the defendants in a memorandum dated November 7, 1963.

During the first hearing two other questions suggested themselves:

1. Did the search warrant describe the premises with sufficient particularity to satisfy the IV Amendment of the Constitution of the United States? [1]

2. Was the search warrant executed in violation of 18 U.S.C. § 3109? [2]

A second hearing was held at which testimony was taken upon these two questions.

Since the same principles govern both motions and a disposition of Veronica's motion will govern Alfred's, only the former will be discussed.

### The Sufficiency Of The Description Of The Property To Be Searched

The warrant directs that a search be made of "707 Lore Avenue, being a white, two-story, stucco and shingled detached house with a glassed enclosed porch on the west side facing Lighthouse Road, situated on the northeast corner of Lighthouse Road and Lore Avenue,

Gordon Heights, New Castle County, Delaware." The name of defendant did not appear in the warrant, and the warrant did not restrict the search to a particular part of the premises.

The Commissioner issued the warrant upon the basis of an affidavit executed by Joseph A. Camplone, a special agent for the Intelligence Division of the Internal Revenue Service. It stated that 707 Lore Avenue was "a one family * * * dwelling". The present problem arises because this was not true.

The defendant testified that while she and her husband occupied the first floor and basement of the house, the second floor was rented to three men as a furnished apartment, consisting of a living room, two bedrooms, a bath and a kitchen. The apartment was not accessible to the defendant and her husband, entry being by a stairway from the front porch. When at the time of arrest defendant told the officers that other persons lived on the second floor, the officers refrained from entering it.

Because the warrant directed the search of 707 Lore Avenue in its entirety, defendant argues that instead of describing "particularly" the place to be searched as the IV Amendment requires, the warrant directed that two places be searched, and hence it is invalid under the principle stated in United States v. Barkouskas, 38 F.2d 837 (M.D.Pa. 1930).[3] In United States ex rel. Sunrise Products Co. v. Epstein, 33 F.2d 982, 984 (E.D.N.Y.1929) the court stated that

---

1. The IV Amendment reads:
"* * * no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, * * *"

2. § 3109 reads:
"*Breaking doors or windows for entry or exit.*
"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

3. This case antedated the Federal Rules of Criminal Procedure which became effective on March 21, 1946. It apparently arose, as did many others involving the same problem, under the National Prohibition Act. Section 25, Title 2 of the National Prohibition Act, c. 85, 41 Stat. 305, 315 provided for the issuance of a search warrant to seize liquor intended for use in violating the Act, and that the warrant should be issued as provided in Title XI of the Espionage Act of June 15, 1917, c. 30, 40 Stat. 217, 228, 18 U.S.C. §§ 611–631. The latter Act was repealed when the Rules of Criminal Procedure were adopted. Notes of Ad.

when warrants have directed the search of apartment houses or other buildings occupied by divers persons, they have been upheld only when by their terms they limited the search to a particular part of the premises, indicated either by a designation of occupants, business carried on, or otherwise. Consistent with this view, warrants have been upheld which directed the search of premises described by street and number but identified the defendants as the occupants, even though other rooms or apartments at the same address were occupied by other persons. Shore v. United States, 60 App.D.C. 137, 49 F.2d 519 (C. A.D.C.1931), cert. den. 283 U.S. 865, 51 S.Ct. 656, 75 L.Ed. 1469 (1931); Kenney v. United States, 81 U.S.App.D.C. 259, 157 F.2d 442 (C.A.D.C.1946).

■ Although defendant has discussed the problem as one of constitutional specificity of description, this would appear to be a misconception. The warrant on its face identifies the property to be searched, i. e. a house at 707 Lore Avenue, with sufficient precision to enable an officer with reasonable effort to ascertain and identify the place. This is all that the IV Amendment requires. Steele v. United States, 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757 (1925); United States v. Joseph, 174 F.Supp. 539 (E. D.Pa.1939), aff'd 278 F.2d 504 (3rd Cir. 1960), cert. den. 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960). Properly analyzed, the question of description in the present context would appear to be one of probable cause.

■ When a warrant directs the search of a multiple occupancy apartment or building, without identifying the particular apartment or room to be searched, the validity of the Commissioner's act in issuing the warrant will depend upon whether probable cause for so describing the premises is shown in the affidavit. A search warrant may validly direct the search of an entire building if probable cause is shown for searching each separate apartment, or for believing that the entire building is actually being used as a single unit; but absent such a showing, a conviction based upon evidence obtained under a warrant commanding a search of the entire building cannot stand. Tynan v. United States, 297 F. 177, 179 (9th Cir. 1924); United States v. Hinton, 219 F.2d 324 (7th Cir. 1955). The evidence upon which a warrant issues must go to all the essential features of the authority to be given by the warrant, of which the particular place to be searched is one. United States v. Innelli, 286 F. 731, 733 (E.D.Pa.1923); Lowrey v. United States, 161 F.2d 30, 33 (8th Cir. 1947), cert. den. 331 U.S. 849, 67 S.Ct. 1737, 91 L.Ed. 1858 (1947), rehearing den. 332 U.S. 787, 68 S.Ct. 36, 92 L.Ed. 369 (1947). In Hinton the court said that "the scope of the warrant to search is dependent upon the extent of the showing of probable cause". 219 F. 2d at 325.

■ When the warrant here involved is examined in the light of the Camplone affidavit there can be no doubt that the Commissioner was justified in issuing a warrant for a search of 707 Lore Avenue in its entirety. Upon the basis of the affidavit the Commissioner had reasonable cause to believe that the premises were being used in accepting bets on horses in violation of the law, and that gambling paraphernalia and related items were located on the premises. The affidavit stated that a deed for 707 Lore Avenue was recorded in the name of the defendant and her husband and that the building was "a one-family dwelling". The Commissioner had no reason to suppose that anyone other than defendant and her husband lived in the house.

It has been held that if a Commissioner has probable cause to issue a search warrant, a defendant may not, by

---

visory Committee on Rules, F.R.Crim.P. 41.

Rule 41 which deals with "Searches and Seizures" is a codification of the law and practice which existed prior to its promulgation. Notes of Advisory Committee on Rules pertaining to Rule 41; 4 Federal Practice & Procedure (Barron) § 2401, p. 348.

a motion to suppress, attack the factual accuracy of the affidavit upon which the Commissioner has acted. United States v. Gianaris, 25 F.R.D. 194 (D.C.D.C. 1960). The statement that "most cases" are of this view, 4 Federal Practice & Procedure (Barron) § 2406, 1963 supplement, p. 371, seems doubtful in light of the impressive line of decisions to the contrary cited in King v. United States, 282 F.2d 398, 400, fn. 4 (4th Cir. 1960). Furthermore, United States v. Gianaris, supra, and like cases appear to be irreconcilable with the statement in Rule 41(e) that "[t]he judge shall receive evidence on any issue of fact necessary to the decision" on a motion to suppress. The Espionage Act of 1917, of which Rule 41 is a codification, likewise permitted the reception of evidence when the grounds on which a warrant issued were controverted. Steele v. United States, supra, 267 U.S. p. 501, 45 S.Ct. p. 415, 69 L.Ed. 757.

The question to be resolved is whether evidence obtained under a search warrant which has been properly issued initially by the Commissioner, must be suppressed when later evidence discloses that it applies not only to premises occupied by the defendant, but also to an apartment occupied by three other persons who, so far as appears, are in no way implicated in the alleged crime. The answer would appear to depend upon whether Camplone, in executing the affidavit, had probable cause to believe that the house at 707 Lore Avenue was, as he stated, a single family dwelling.

▮ When in Dumbra v. United States, 268 U.S. 435, p. 441, 45 S.Ct. 546, p. 549, 69 L.Ed. 1032 (1925) it was as-serted that a search warrant had been issued without probable cause, the Court said that the only question was: " * * whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched; * * *." This statement was made when the sufficiency of the affidavit itself was challenged. The same "probable cause" criterion was resorted to in determining the validity of a search made by an officer without a warrant, Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L. Ed. 1879 (1949). With equal logic, it would seem that if an affiant has reasonable grounds for believing that an entire building should be searched, a warrant directing such a search should be sustained, even if it be later shown that affiant's belief was erroneous, provided the search is actually restricted to the part of the building to which the warrant should have been limited.[4]

Implicit support for this view is found in the reasoning and results reached by other courts. In United States v. Santore, 290 F.2d 51, 66–67 (2nd Cir. 1960), cert. den. 365 U.S. 834, 835, 81 S.Ct. 749, 5 L.Ed.2d 744 (1961), the court sustained a warrant which directed the search of a "one family house" which it identified by street and number, even though later evidence disclosed that one floor was rented as an apartment to a family having no involvement in the alleged crime. The Court said (290 F.2d p. 67) "[t]he house * * * is to all outward appearances a one-family house * * *. * * * The description in the warrant was in accordance with the outward appearance of the structure, * * *."[5]

4. What the consequences would have been if the second floor apartment had been searched, need not be decided. Some courts that have sustained searches under warrants directed against multiple occupancy premises have emphasized the fact that the search was actually limited to the property which there was reason to search. United States v. Lepper, 288 F. 136, 139 (W.D.N.Y.1923); Shore v. United States, supra, 49 F.2d p. 521. See Steele v. United States, supra, 267

U.S. p. 504, 45 S.Ct. p. 416, 69 L.Ed. 757. In United States v. Hinton, supra, 219 F. 2d p. 326, it was said that the fact that the search was more limited than the property specified in an unduly broad warrant, was not material.

5. The house had been converted into a two family dwelling without obtaining permission from the proper authorities, in contravention of local ordinances. No comparable fact appears in the instant case.

In Carney v. United States, 79 F.2d 821 (6th Cir. 1935), the search warrant described the premises as "two buildings consisting of a saloon and a combined sandwich shoppe and residence in Kenton County, Kentucky, etc." The trial evidence revealed that the building was a residence only, and not physically connected with the saloon. When the affidavit was made the building bore a sign "Green Top Sandwich Shoppe" which the affiant had observed. The court upheld the search on the ground that the affidavit and warrant described the property "as advertised". (79 F.2d p. 822). In United States v. Nagle, 34 F.2d 952 (N. D.N.Y.1929), the warrant directed the search of a hotel designated by name and location. The hotel contained three rooms which were occupied under conditions which made each of them a separate "private dwelling" as defined by the National Prohibition Act. The warrant was attacked upon the ground, among others, that it directed the search of at least two separate places and hence did not particularly describe the place to be searched. Finding that the three "private dwellings" had not been searched, the court sustained the validity of the warrant. The court said that "to all outward appearance, and as far as can readily be ascertained, [the hotel] is a single premises or place used for business purposes within section 39 of title 27 of the United States Code," (34 F.2d p. 957).[6]

So that the critical question is whether Camplone had reasonable grounds for believing that defendant's residence was a one family dwelling when he so characterized it in his affidavit.

Camplone did not testify. But defendant testified that access to the second story apartment was by means of a doorway inside of a glassed-in porch, which led to a vestibule inside the house, from which a stairway led to the apartment. On the outside of the house there was no indication that it was anything other than a one family dwelling. Defendant has pointed to nothing which would have put Camplone on notice that the second floor was rented to third persons. Camplone has reasonable grounds to believe that the house was occupied only by defendant and her husband, and he was justified in describing it as he did in his affidavit. The fact that the warrant was broader than it should have been had the true facts been stated in the Camplone affidavit, does not invalidate the search.

### The Manner In Which The Warrant Was Executed

If the execution of a search warrant by federal officers is in violation of 18 U.S.C. § 3109, the evidence obtained must be suppressed in a federal court action. Woods v. United States, 99 U.S. App.D.C. 351, 240 F.2d 37 (C.A.D.C. 1957), so held and such is the plain implication of Jones v. United States, 362 U.S. 257, 272, 80 S.Ct. 725, 4 L.Ed.2d 697 (1959). This is the clear purport of Rule 41(e). It states that if property is obtained by the illegal execution of a search warrant, it shall be suppressed as evidence. Although Barrientes v. United States, 235 F.2d 116 (5th Cir. 1956), cert. den. 352 U.S. 879, 77 S.Ct. 102, 1 L.Ed.2d 80 (1956) is to the contrary, it cannot be reconciled with Rule 41(e) and the Jones case.[7]

6. Section 39 of Title 27 (Oct. 28, 1919, c. 85, Title II, § 25, 41 Stat. 315) provided: "No search warrant shall issue to search any private dwelling occupied as such unless it is * * * in part used for some business purpose such as a store, shop, saloon, restaurant, hotel or boarding house. The term 'private dwelling' shall be construed to include * * * rooms used and occupied not transiently but solely as a residence in an apartment house, hotel, or boarding house."

7. In United States v. Freeman, 144 F. Supp. 669, 670 (D.C.D.C.1956) the court said, by way of *dictum*, that evidence obtained by the execution of a search warrant in violation of 18 U.S.C. § 3109 is not thereby rendered inadmissible in a criminal trial before the District Court for the District of Columbia, since a violation of the statute does not necessarily rise to the dignity of a violation of the IV Amendment. The decision assumes that principles governing the admissibility

The facts pertaining to the execution of the warrant are these: At about 1:30 P.M. on May 4, 1963, Maloney, accompanied by state and federal officers, arrived at defendant's residence. After disbursing certain members of the party around the house, Maloney and two of the state officers proceeded to the kitchen door. Maloney went up the steps and banged on an outer screen door at least three times and yelled, "federal officers with a search warrant, open the door". The solid kitchen door was ajar. After waiting approximately twelve or fifteen seconds one of the police officers, presumably peering into the kitchen through the partially opened door, said to Maloney, "there's a woman standing there". Thereupon Maloney opened the screen door which was unlocked, and, preceded by two state officers, entered the kitchen by pushing open the solid door which was already ajar. A woman was standing in the doorway between the living room to the kitchen. An elderly man, later identified as defendant's father-in-law, was sitting on a sofa in the living room. Upon inquiry by Maloney, the woman identified herself as the defendant. Maloney stated that he was a federal officer, that he had a warrant for her arrest, and that she was under arrest. He then told her that he had a search warrant and was going to search the house. When defendant stated that other people lived upstairs in an apartment, Maloney directed that no search be made of the second floor. The officers searched only the kitchen and the basement. Papers

appearing to pertain to numbers bets and horse bets and certain other items were seized.

Defendant argues that the officers broke open an outer door without being refused admittance and hence the execution of the warrant was in violation of § 3109.

The threshold question is whether the opening of the closed, unlocked screen door and the entry into the kitchen through the permanent door which was open, constituted a breaking open of an outer door within the meaning of § 3109. Only two cases appear to have considered whether an officer who enters a closed, unlocked door for the purpose of executing a warrant is deemed to have broken open the door within the intendment of § 3109. United States v. Bowman, 137 F.Supp. 385, 388 (D.C.D.C.1956), a District Court decision, holds that "\* \* \* So long as the entry is peaceful and there is no breaking of parts of the house, the execution of the search warrant is legal." A contrary conclusion was later reached by the Court of Appeals in Keiningham v. United States, 109 U.S.App.D.C. 272, 287 F.2d 126 (C. A.D.C.1960). There, without referring to Bowman, the court said that "a person's right to privacy in his home (and the limitation of authority to a searching police officer) is governed by something more than the fortuitous circumstance of an unlocked door, and that the word 'break,' as used in 18 U.S.C. § 3109, means 'enter without permission.'" (287 F.2d p. 130).[8] This latter construc-

of evidence in federal criminal trials are restricted to those derived solely from the Constitution. But in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943) this view was rejected. The Court held that the federal courts had the duty, in supervising the administration of criminal justice, to establish rules of evidence consistent with "civilized standards" which were not to be satisfied merely by minimal constitutional safeguards (318 U.S. pp. 340–341, 63 S.Ct. pp. 612, 613, 87 L.Ed. 819). On this nonconstitutional basis, evidence obtained in violation of Rule 5(a) has been held to be inadmissible in a federal court trial in

the District of Columbia. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

8. An entry through an open door has been held not to be a breaking either under the common law, United States v. Dross, 224 F.Supp. 142, 145 (S.D.N.Y.1963), or under a statute of the State of Washington, substantially like § 3109, Hopper v. United States, 267 F.2d 904, 908 (9th Cir. 1959). Although in United States v. Silverman, 166 F.Supp. 838 (D.C.D.C. 1958) the court stated that § 3109 was limited to situations in which officers broke into premises "by force", the deci-

tion of § 3109 is consistent with the common law view. Annotation, 61 Am.Dec. 137 (1854). In "Arrest Without A Warrant" by Wilgus, 22 Mich.L.R. 806 it is said that the concept of "breaking" for the purpose of serving a warrant is the same as in burglary: " * * * lifting a latch, turning a doorknob or pushing open a closed door * * * ".[9]

The opening the unlocked screen door by Maloney and the other officers was therefore a breaking of an outer door within the contemplation of § 3109.

Before entering defendant's residence, Maloney gave notice of his authority and purpose. Hence, the entry was not in violation of § 3109, if the failure of defendant to respond to Maloney's knocks was the equivalent of a refusal to admit him. "[T]he [statutory phrase] 'refused admittance' is not restricted to an affirmative refusal." Masiello v. United States, 115 U.S.App.D.C. 57, 317 F.2d 121, 122 (C.A.D.C.1963).

After knocking and identifying himself and his purpose, Maloney waited twelve or fifteen seconds. It was not until he was told by a state officer that "there's a woman standing there" that he entered. The place where defendant was standing was only four or five feet from the door through which the officers entered. Defendant testified that when she first heard the knock she was on the way from the bathroom to the kitchen.

This required her to pass through the living room. From the description of the house defendant could easily have reached the outside kitchen door in less than twelve seconds after hearing the knock. In any event she had ample time to call out to the officers either to enter or await her arrival at the door, if such had been her wish. Defendant's failure to pursue either of these courses was tantamount to a refusal to admit the officers.[10]

Maloney conceded that before entering the house he encountered no resistance and that he had seen no one running around as if trying to destroy evidence. He said, however, that when an officer is about to enter a place where wagering activities are being conducted, it is to be assumed that the evidence will be destroyed after the officer has identified himself. The fact that Maloney had never seen the defendant and did not know that she was inside the house before entering it, is immaterial.

The manner in which the search warrant was executed did not violate § 3109.

When a motion is made to suppress evidence upon the ground that it has been obtained by an illegal search, the burden rests upon defendant to establish all facts necessary to sustain the motion. Wilson v. United States, 218 F.

---

sion does not reveal the basis for the court's holding that the entry was without force. (166 F.Supp. p. 841). Entry by the use of a pass key has been held to be the equivalent of a breaking under § 3109, Munoz v. United States, 325 F. 2d 23, 26–27 (9th Cir. 1963), and has been assumed to be a breaking in Ker v. California, 374 U.S. 23, 38, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1962).

9. Under the Delaware burglary statute "break" means "[o]pening * * * by any means whatever, any outer door * * * ". 11 Del.C. § 391 (1962 Supp.) Prior to the statute the turning of the knob of an outer door which a person was not entitled to enter constituted a breaking for purposes of burglary. State v. Edell, 7 W.W.Harr. 404, 37 Del. 404, 183

A. 630 (Del.Ct. of Gen.Sess.1935). The same effect was accorded to the opening of an unlocked door by the lifting of a latch. State v. Snow, 3 Penn. 259, 51 A. 607 (Del.Ct. of Gen.Sess.1901).

10. The length of time which an officer must wait for a response before making an entry by "breaking", will, of course, depend upon circumstances. United States v. Barrow, 212 F.Supp. 837, 846 (E.D.Pa.1962). In at least one instance involving a gambling charge, a delay of ten seconds was held to be long enough. See Masiello v. United States, 113 U.S.App.D.C. 32, 304 F.2d 399, 400 (C.A.D.C.1962), where the Court of Appeals found it unnecessary to pass upon the District Court's ruling.

2d 754, 757 (10th Cir. 1955). Defendant has not borne that burden.

The motion of the defendants to suppress the property which was seized, and to have it returned to them will be denied.