Joshuway Burl DAVIS, Appellant,

v.

STATE of Alaska, Appellee.

No. 1973.

Supreme Court of Alaska.

Aug. 16, 1974.

Ben Esch, Asst. Public Defender, Herbert D. Soll, Public Defender, Anchorage, for appellant.

W. H. Hawley, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

CONNOR, Justice.

Appellant was convicted, upon a jury verdict, of both possession and sale of the narcotic drug heroin, in violation of AS 17.10.010. In this appeal he asserts that police officers, while executing a valid search warrant, did not act lawfully under (1) the Fourth Amendment to the United States Constitution, (2) Article I, Section 14 of the Alaska Constitution, and (3) AS 12.25.100. He contends, therefore, that the evidence seized under the warrant should have been suppressed.

At 10:10 a. m. on March 24, 1972, seven police officers from both the Anchorage Police Department and the Alaska State police arrived at the residence of appellant Joshuway Davis and wife, located at 1401 East 15th Avenue, Anchorage, Alaska, in order to execute a search warrant. At least one of the police officers knew Davis had a criminal record, and, on the basis of his knowledge of Davis' background and information received from informants, believed that Davis was potentially dangerous.

The party of officers approached the house in two groups. Lt. Duley, Officer Hettinga and Officer Rupert Jones went to the back of the house. Officers Elliott and Douglas Jones, and Investigators Jansen and McCoy went to the front of the house. Officer Douglas Jones knocked loudly on the front door, stated that he was a police officer, that he had a search warrant, and demanded entry. There was no response. He apparently repeated this procedure two more times. When there was again no response, he instructed Jansen to break down the door, but Jansen

was unsuccessful in his attempts to do so. The attempt to break in apparently took place approximately 30 seconds after the initial knocking.

Meanwhile, after hearing Officer Douglas Jones knocking and announcing himself at the front door, Lt. Duley began to knock on the back door. He announced that he was a police officer, stated that he had a search warrant, and demanded that the door be opened. There is a discrepancy in the testimony as to whether Duley repeated this procedure. No noises were heard from inside the house, nor were any movements seen inside the house. When there was no response to his knocking, Lt. Duley attempted to kick down the door, and finally gained entry by breaking the glass in the window of the door, reaching in, and unlocking the door from the inside. There is some uncertainty as to the amount of time which elapsed from the initial knocking by Officer Douglas Jones at the front of the house to the entry at the rear, and from when Duley knocked at the rear of the house to when he forced entry. Evidence in the record would, however, support a finding that from 30 seconds to one minute and fifteen seconds went by from the time of the knocking at the front of the house to the entry at the rear of the house, and that from 30 to 45 seconds elapsed from the time the knocking began at the back door to the entry at the rear of the house.

After gaining entry, Duley and Hettinga went to the front door of the house and admitted Jones and the other officers. Appellant and his wife were both found in the house. The house and garage were searched. Heroin, cutting powder, empty heroin balloons, marked and unmarked money, and some guns were found and seized.

The motion to suppress the evidence related to the narcotics charge on the ground that the entry was illegal was denied by the trial court, though the court ordered that the guns and some of the money seized be suppressed on other grounds. In

reaching its conclusion, the trial court found specifically that ". . . 30 seconds is more than enough in a narcotic case in breaking down a door if no answer is received in 30 seconds."

We first reach the constitutional question raised by appellant of whether the police in this case violated his Fourth Amendment privilege against unreasonable searches and seizures by forcing entry into the residence.[1] Under the Fourth Amendment, "[t]here is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374, 382 (1931).

The issue of reasonableness with respect to a forced entry usually concerns a search where a valid search warrant was not obtained or a pre-entry announcement was not made. *See, e. g.*, Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). These issues are not presented in the case at bar.

We have been referred to no federal constitutional requirement as to the length of time an officer must wait before entering an area to be searched after announcing his presence, identity and purpose.[2] We hold that in this case, the forced entry into appellant's residence by police who had a search warrant and had announced their identity and purpose, was reasonable and therefore did not violate the federal constitutional prohibition against unreasonable searches and seizures. Moreover, we are not persuaded that the Alaska constitutional prohibition against unreasonable searches and seizures should, as to this particular subject, be interpreted more strictly than the federal constitution. We hold that the entry by the police in this case did not violate Article I, Section 14, of the Alaska Constitution.[3]

The more substantial question presented by this appeal is whether the police entry violated Alaska Statute 12.25.100, which provides: "A peace officer may break into a building or vessel in which the person to be arrested is or is believed to be, if the officer is refused admittance after he has announced his authority and purpose." That statute, in conjunction with AS 12.-35.040,[4] establishes the procedure for forcing entry in executing both a search warrant and an arrest warrant. If the police entry did not comply with the requirements of this statute, the subsequent search was unlawful and the evidence obtained would not be admissible. McClure v. United

---

1. The Fourth Amendment to the United States Constitution provides:
    "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

2. In fact, it is not clear that an announcement by the police of their identity and purpose is required by the United States Constitution, even absent exigent circumstances. Some courts have upheld police entries without announcement in narcotics and gambling cases, permitting police to assume that it is necessary that they enter without announcement because evidence in those cases may be easily disposed of. *See, e. g.*, Waugh v. State, 3 Md.App. 379, 239 A.2d 596 (Md. Sp.Ct.App.1968) (narcotics); State v. Juliano, 97 N.J.Super. 28, 234 A.2d 236 (N.J.

1967) (gambling). *But see*, State v. Valentine, 504 P.2d 84, 85–87 (Or.1972). Because announcement was made in this case, however, we need not fashion a constitutional rule respecting police pre-entry announcement in narcotics cases.

3. Article I, Section 14, of the Alaska Constitution provides:
    "The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

4. AS 12.35.040 provides that:
    "In the execution or service of a search warrant, the officer has the same power and authority in all respects to break open any door . . . as he has in the execution or service of a warrant of arrest."

States, 332 F.2d 19, 21 (9th Cir. 1964). The question we must consider is whether the officers who broke into appellant's residence in this case were "refused admittance" within the meaning of AS 12.25.100.

■ It is clear that an affirmative refusal to admit by the occupants of a house after the police have announced their presence, identity, and purpose is not necessary. As stated by Judge (now Chief Justice) Burger in Masiello v. United States, 115 U.S.App.D.C. 57, 317 F.2d 121 (1963), in interpreting 18 U.S.C. § 3109, a statute essentially identical to AS 12.25.100:

> ". . . the phrase 'refused admittance' is not restricted to an affirmative refusal. Indeed it would be an unusual case coming before the courts where an occupant affirmatively 'refused admittance' or otherwise made his refusal known verbally after being given notice . . . ." 317 F.2d at 122.

See also, United States v. Woodring, 444 F.2d 749, 751 (9th Cir. 1971).

■ The question of what must occur after the police have announced their identity and purpose before they may properly assume that they have been "refused admittance" has been treated by courts in other jurisdictions in interpreting statutes comparable to AS 12.25.100. These courts have been unwilling to formulate a precise rule as to how long the police must wait after announcing their identity and purpose before they may infer that they have been refused admittance. As stated in United States v. Cruz, 265 F.Supp. 15, 23 (W.D. Tex.1967),

> "There is no fixed rule as to the time an officer must wait after announcing his authority and purpose before using force

to break into a residence. It would seem to depend upon the particular circumstances in each case and the apparent exigencies of the situation."

United States v. Poppitt, 227 F.Supp. 73 (D.Del.1964), is a case similar in all important respects to the case at bar except that the police in *Poppitt* saw someone inside the house. The court held that after a wait of 12–15 seconds between the time the police knocked and announced their identity and purpose and the time they entered the house, the police could reasonably infer that they had been refused admittance. The test there seems to have been the length of time necessary for the occupant reasonably to either reach the door or respond to the officers:

> "From the description of the house defendant could easily have reached the outside kitchen door in less than twelve seconds after hearing the knock. In any event she had ample time to call out to the officers either to enter or await her arrival at the door, if such had been her wish. Defendant's failure to pursue either of these courses was tantamount to a refusal to admit the officers." 227 F. Supp. at 80. (footnote omitted)

Depending on the surrounding circumstances, courts have frequently upheld forced entries made within a rather short period after the police announced their presence and purpose.[5]

■ In determining in a particular case whether police may reasonably infer that they have been "refused admittance", it is useful to examine the purpose of the statute. The purposes of the announcement requirement are: (1) to protect the occupant's right to privacy, Miller v. United

---

5. See McClure v. United States, 332 F.2d 19 (9th Cir. 1964) (entry 4 or 5 seconds after announcement upheld where police saw a woman inside and heard scuttling noises); United States v. Allende, 486 F.2d 1351 (9th Cir. 1973) (entry after 10 seconds upheld where scampering sounds were heard); United States v. Cruz, 265 F.Supp. 15 (W.D. Tex.1967) (entry after 15 seconds upheld where the parties inside were believed to be dangerous, and the police heard rustling and scuffling); United States v. West, 328 F.2d 16 (2d Cir. 1964) (entry after 30 seconds upheld where movement was heard). In United States v. Gorman, 208 F.Supp. 747 (E.D.Mich.1962), an entry by the police within 25 or 30 seconds after they announced their purpose and identity was upheld in a gaming case in the absence of any exigent circumstances.

States, 357 U.S. 301, 313, 78 S.Ct. 1190, 2 L.Ed.2d 1332, 1340 (1958); (2) to safeguard the police who might be mistaken for prowlers and be shot, *Id.*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332, note 12 at 1340; and (3) to protect other persons who might be injured by violent resistance to unannounced entries. State v. Valentine, 504 P.2d 84, 87 (Or.1972).

The requirement that the police be refused admittance before breaking in, in addition to providing another safeguard to protect the occupant's privacy and the security of people on or near the premises, has the purpose of preventing damage to property and providing for the convenience of the occupant. As stated by the court in Masiello v. United States, 115 U.S.App.D. C. 57, 317 F.2d 121 (1963), in reference to the similar federal statute:

> "The purpose of the statute, among other things, is to allow the occupant to open the door to admit officers who are legally authorized to enter so that they may execute their duties with the least possible inconvenience to the occupant." 317 F.2d at 122.

■ In the case at bar, the police believed that appellant might be armed and dangerous. They knocked loudly and announced their presence and purpose at both the front door and the back door. They heard no one coming to the door. In this situation, it was reasonable for them to assume that their loud knockings had been heard by anyone who was inside. It is unlikely that a longer wait would have further accommodated occupants who had heard the knocks and desired to respond legally to the officers' demands. The police were not required to assume at 10:10 a. m. that the occupants were in bed and thus that they should wait longer, or that no one was at home and therefore that they should go away and return later. In some circumstances an even longer wait might not be long enough. In still other cases a shorter wait might be upheld under the statute.[6] In the circumstances of this case, however, we hold that the officers waited long enough to justify a reasonable inference that they had been refused admittance. Their entry was, therefore, not unlawful under AS 12.25.100. It follows that the motion to suppress was properly denied as to the contested items. There is no error.

Affirmed.

---

6. We agree with the statement in Masiello v. United States, *supra* at 123:

"It would be a grave error to construe what we have said to mean that we are disposed to sustain all speedy entries and searches which are forcibly executed. Quite the contrary. . . . [C]lose cases such as this will always receive careful appellate scrutiny. It is very desirable as an aid to appellate review that the facts concerning the required preliminary steps to entry should be developed and the factors relied on by the prosecution should appear in the record and be the subject of findings."