Gladyne C. SANDLAND, Appellant,

v.

STATE of Alaska, Appellee.

No. 4960.

Court of Appeals of Alaska.

Nov. 27, 1981.

---

Sue Ellen Tatter, Asst. Public Defender, Dana Fabe, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

Charles M. Merriner, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C. J., COATS and SINGLETON, JJ.

BRYNER, Chief Judge.

Gladyne Sandland appeals from her conviction for possession of heroin. The sole ground of the appeal is the superior court's refusal to suppress narcotics seized in a search of her apartment. Sandland alleges that the search was improper because the police violated her constitutional right to privacy and the statutory knock-and-announce requirement for serving a warrant.[1]

The essential facts were not disputed, and in denying Sandland's motion to suppress the narcotics seized, the trial judge entered careful and thorough findings of fact, which we have accepted. He concluded:

Both the actual force employed and the display of potential force which occurred were consistent, I believe, with the purposes for requiring the announcement of purpose and authority in the first place. Considering all the circumstances, the decision that the entry had been resisted was proper and that the means employed to enter the residence were—and to effect the search were reasonable.

Appellant argues that the police violated the knock-and-announce statute since, after announcing their identity and purpose, they failed to give her sufficient time to open the door voluntarily before they pushed it open; the time elapsed, she says, was too short to support an inference that entry had been refused. Appellant also contends that no exigent circumstances justified the forcible entry here without literal compliance with the terms of the statute.

In *Davis v. State*, 525 P.2d 541, 545 (Alaska 1974), the Alaska Supreme Court noted two specific purposes furthered by Alaska's knock-and-announce statute: first, the statutes are aimed at assuring convenience to the occupants of the premises to be searched and demonstrating regard by the law for their privacy; second, the statutes are designed to prevent needless destruction of property and to minimize the risk of forcible resistance by occupants who might mistakenly believe that officers executing a warrant are trespassers. In *Davis*, the court indicated that the question of compliance with the statute is not rigid, but must be determined by the particular facts of each case. *See also Lockwood v. State*, 591 P.2d 969, 972 (Alaska 1979). A similar approach has been adopted by federal cases.[2] Thus, for example, the ninth circuit has stated that the rule requiring police to await refusal of admittance before forcing entry to serve a warrant should apply "flexibly," giving consideration to the purposes of the knock-and-announce law. *United States v. Bustamante-Gamez*, 488 F.2d 4, 11 (9th Cir. 1973), *cert. denied*, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974). *See also Sabbath v. United States*, 391 U.S. 585, 591 n.8, 88 S.Ct. 1755, 1759 n.8, 20 L.Ed.2d 828, 834 (1968); *United States v. Scott*, 520 F.2d

---

1. AS 12.35.040 provides:

   *Authority of officer executing warrant.* In the execution or service of a search warrant, the officer has the same power and authority in all respects to break open any door or window, to use the necessary and proper means to overcome forcible resistance made to him, or to call any other person to his aid as he has in the execution or service of a warrant of arrest.

   AS 12.25.100 provides:

   *Breaking into building or vessel to effect arrest.* A peace officer may break into a building or vessel in which the person to be arrested is or is believed to be, if the officer is refused admittance after he has announced his authority and purpose.

2. The federal knock-and-announce statute, 18 U.S.C. § 3109, has been held to be "essentially identical" to AS 12.25.100. *Davis v. State*, 525 P.2d at 544.

697, 700–01 (9th Cir. 1975), *cert. denied,* 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976); *United States v. Leon,* 487 F.2d 389, 394 (9th Cir. 1973); and *Gilbert v. United States,* 366 F.2d 923, 931–32 (9th Cir. 1966).

These cases suggest that in the absence of strict adherence to knock-and-announce requirements a balancing test invoking the purposes of the statute and the exigencies of the particular case is appropriate. When examination of the totality of the circumstances reveals that the level of hindrance to the dual statutory purposes is justified in light of the exigencies of the case, lack of literal compliance may be excused.

■■■■ We agree with Sandland's contention that, in the absence of exigent circumstances, ten or twenty seconds following a knock accompanied by announcement of authority and purpose is ordinarily too short a time to permit an inference by police that entry has been refused.[3] We need not decide whether such an inference was justified by particular facts in this case. Applying a balancing test to the circumstances of this case, we find that exigent circumstanc-

es excused literal compliance with the knock-and-announce statute, and we thus conclude that the police entry here met the requirement of "substantial compliance." *Lockwood v. State,* 591 P.2d 969, 972 (Alaska 1979).

Here, the police complied in major part with the knock-and-announce rule. There were multiple knocks and at least one unequivocal announcement of authority and purpose that preceded entry into Sandland's apartment.[4] When the police entered, they did not force entry through a locked door but simply opened an unlocked door. The two specific purposes behind the "refusal of admittance" rule—preventing destruction of property and providing convenience to occupants, *Davis v. State,* 525 P.2d 541, 545 (Alaska 1974), were to a great extent served in this instance. Neither the occupants' convenience interest nor their interest in unnecessary damage to property is threatened as strongly when police enter through an unlocked door as when they enter forcibly.[5] *See United States v. Bustamante-Ga-*

---

3. We are aware of only two cases where courts have approved entry after less than a 30-second wait without finding exigent circumstances. *United States v. Poppitt,* 227 F.Supp. 73 (D.Del.1964) (12 to 15 seconds); *United States v. Gorman,* 208 F.Supp. 747 (E.D.Mich. 1962) (25 to 30 seconds). Both of these cases involved the existence of exigent circumstances.

4. We note that the 10- to 20-second period to which we have alluded in this case encompasses only the period of time between the full announcement by the officers of their authority and purpose and their actual entry of Sandland's residence. Here, the officers' announcement was preceded by several efforts to have Sandland open the door. The findings of the trial court with reference to the totality of the searching officers' efforts before entering Sandlands' residence are as follows:

    [Police Officer] Adams knocked loudly, 5 or 10 seconds passed. Adams knocked loudly again and said, quote, Gladyne, unquote. Ten seconds passed. Adams knocked loudly again and said, quote, police officers, unquote. Another 10 seconds passed. Adams knocked loudly again, and said, quote, police officers with a search warrant, unquote. And waited 10 seconds more. At some point during these—during these knocks and announcements an unusual high-pitched sound

    was heard of unknown origin. After announcing purpose and authority, as I have indicated, a 10-second wait occurred, the officers tried the door, the signal was given, and entry made . . . .

    While it may be true, strictly speaking, that literal compliance with the knock-and-announce statute must be measured from the time at which announcement of purpose and authority was first made, we do not deem the conduct of the officers prior to such announcement to be wholly irrelevant. Since the officers knocked at least three separate times, over a period of approximately 30 seconds, before they announced their authority and purpose, it could reasonably be expected that, once authority and purpose were announced, occupants of the residence would be capable of responding more quickly than if no efforts had preceded the announcement. We consider this factor significant in gauging the extent to which the purposes of the knock-and-announce provisions were violated.

5. A potentially complicating factor is presented by the fact that forcible entry into the rear of Sandland's residence was made by officers participating in the search. When officers positioned at the front of the residence opened the door and entered, other officers, apparently by prearranged signal, broke three windows at the rear of the apartment. The windows were lo-

*mez*, 488 F.2d 4, 11–12 (9th Cir. 1973), *cert. denied*, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974).

Here, too, police had a reasonable fear for their own safety while they waited at the door. This is not a situation where police knew only that one resident of the property owned a weapon. From a reliable informant, the police knew that Young, a man staying at the apartment who had just flown into town with a shipment of heroin, had that day displayed his loaded pistol. The structure of the entryway afforded the officers no protection against a gunshot aimed at the door. Reasonable belief of peril to the police has been found to excuse full compliance with knock-and-announce rules. *United States v. Leon*, 487 F.2d 389, 394 (9th Cir. 1973); *United States v. Scott*, 520 F.2d 697, 700–01 (9th Cir. 1976), *cert. denied*, 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976); *but see United States v. Fluker*, 543 F.2d 709, 717 (9th Cir. 1976) (belief that apartment contained gun insufficient to excuse total disregard of knock-and-announce rules).

Balancing the circumstances presented by the record in this case, we conclude that suppression of evidence is unwarranted. On the one hand, the attempts of the searching officers to comply with the knock-and-announce statute were not merely token in nature; rather, they fulfilled, to a substantial extent, the purposes which the knock-and-announce statute was calculated to serve. For the police to have waited longer before entering would have provided only a negligible increment to the privacy and convenience of the apartment's occupants. On the other hand, the fact that the officers were searching for narcotics, which could readily have been destroyed, the knowledge by the officers that a firearm, apparently held in connection with the drugs, was probably within the residence, and the particularly vulnerable position that the officers were placed in due to the configuration of the entryway to the residence were factors that contributed to a substantial level of exigency.[6]

The statutory knock-and-announce rules provide greater protection to individuals within their homes than do the constitutional guarantees of privacy or freedom from unreasonable searches. *See Davis v. State*, 525 P.2d at 543. Therefore, we need not consider Sandland's separate claim that the police conduct here violated her right to privacy under article I, section 22 of the Alaska Constitution.

We AFFIRM the decision denying suppression of the drugs seized.

cated directly above the area of the bathroom and kitchen sinks. While we believe that the police conduct in breaking through the rear windows may have been unwarranted under the circumstances of this case, the issue is not determinative and need not be decided, since it is undisputed that no evidence was seized as a result of the window-breaking.

6. Approximately two weeks prior to the search in question, Gladyne Sandland had been contacted by police officers at her apartment in connection with a report that there was heroin on the premises. Sandland was cooperative with the officers, allowing them to enter her residence and providing them with information concerning narcotics transactions that had been engaged in by other individuals in her residence shortly before the police arrived. No drugs were found at the time, but officers seized paraphernalia believed to contain narcotics residue. Sandland now maintains that her prior cooperation, of which the officers executing the warrant were aware, compels a finding that there was no reasonable cause for fear by the officers.

We reject this argument. Unlike the prior police contact with Sandland, the situation when the search warrant was executed involved the presence of another person. Information available to the police indicated that that person, not Sandland, was primarily involved with the narcotics which were the subject of the search and that a gun was apparently kept by him in connection with his possession of the narcotics. Given these circumstances, we believe that it would have been patently unreasonable for the officers involved in the search to proceed on the assumption that they would be greeted with the same level of cooperation which they had previously encountered.