*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| DANIEL LUM and POLLY LUM, for themselves and for their minor children JOSEPH AVEOGANNA, ELIZABETH HAWLEY, AIYANNA LUM, and JAMIE LUM, | ) ) ) ) ) | Supreme Court No. S-14424 |

DANIEL LUM and POLLY LUM, for
themselves and for their minor children )  Supreme Court No. S-14424
JOSEPH AVEOGANNA, ELIZABETH )
HAWLEY, AIYANNA LUM, and )  Superior Court No. 2BA-07-00083 CI
JAMIE LUM, )
                                        )  O P I N I O N
            Appellants, )
                                        )  No. 6855 - December 13, 2013
        v. )
                                        )
GWEN KOLES (GRIMES), BENJAMIN )
HUNSAKER, JOSE GUTIERREZ, and )
NORTH SLOPE BOROUGH, )
                                        )
            Appellees. )
                                        )

Appeal from the Superior Court of the State of Alaska, Second Judicial District, Barrow, Michael I. Jeffery, Judge.

Appearances: Colleen A. Libbey, Libbey Law Offices, Anchorage, for Appellants. Peter C. Gamache, Law Office of Peter C. Gamache, Anchorage, for Appellee North Slope Borough, and Brent R. Cole, Law Office of Brent R. Cole, P.C., Anchorage, for Appellees Koles, Hunsaker, and Gutierrez.

Before: Fabe, Chief Justice, Winfree, Stowers, and Bolger, Justices. [Maassen, Justice, not participating.]

WINFREE, Justice.

# I.    INTRODUCTION

In response to a domestic disturbance call, police officers entered a residence without a warrant and pepper sprayed and handcuffed a resident. The family sued for excessive force and unlawful entry. The superior court dismissed the claims on summary judgment, granting qualified immunity for the excessive force claims and holding that the family had not raised a cognizable unlawful entry claim. The superior court later denied the family's Alaska Civil Rule 60(b)(2) motion to set aside the rulings based on newly discovered evidence. The family appeals; we affirm the summary judgment ruling and the denial of the Rule 60(b)(2) motion, but we remand for further proceedings on the family's trespass and invasion of privacy claims raised for the first time during the summary judgment proceedings.

# II.    FACTS AND PROCEEDINGS

## A.    Facts

In September 2007 the North Slope Borough (NSB) Police Department received an emergency-line telephone call requesting officers to go to Polly and Daniel Lum's residence "for a welfare check on some children." The caller stated that she was a friend of Polly's and had just received a call for help. The caller reported hearing Polly and Daniel "fighting and screaming" and children crying. She also reported that Polly had "bruises and a cut on her head." She indicated that there were four or five children in the home and that the incident had happened within the last five minutes.

The police dispatcher then contacted all units, explaining that a call had come in from a "[f]emale asking [for a] welfare check on [a] couple as they were having a domestic dispute. Kids are crying, and she is concerned regarding kids' welfare . . . ." Two NSB police officers, Sgt. Jose Gutierrez and Officer Gwen Grimes, responded to the Lum residence, a duplex with a common hallway access. The officers activated their recorders, creating audio recordings of the incident. Sgt. Gutierrez and Officer Grimes

later stated that they could hear an argument inside the residence, although the parties contest whether this is reflected in the recordings. Sgt. Gutierrez knocked on the outer door and a child invited the officers into the common hallway. Sgt. Gutierrez asked where the child's parents were, and the child replied "over there," pointing to the Lums' apartment. The officers walked through the hallway, and, without knocking or announcing their presence, entered the Lum residence.

When the officers entered the apartment, Daniel and Polly were in the bathroom with their infant daughter. Daniel told the officers to leave. Officer Grimes told Daniel to come out of the bathroom. Daniel accused Officer Grimes of shooting at him during a previous encounter and attempted to shut the bathroom door, separating himself, Polly, and their infant from the officers. The officers pushed against the door to stop Daniel from closing it. Officer Grimes then sprayed oleoresin capsicum (pepper spray) once in Daniel's face to subdue him. Daniel immediately stopped resisting and came out of the bathroom. The officers handcuffed Daniel due to what they later described as his "erratic behavior and resistance."

Daniel had a strong and immediate reaction to the pepper spray, calling repeatedly for water and saying he could not breathe. Officer Benjamin Hunsaker then arrived, and Officers Hunsaker and Grimes took Daniel outside to defuse the situation and ameliorate the pepper spray's effects. Daniel continued saying that he could not breathe and began complaining that he was having or about to have a panic or heart attack. He repeatedly asked for someone to wipe his eyes; he also requested an ambulance. The officers wiped Daniel's face multiple times, pointed him into the wind to lessen the pepper spray's effects, and informed him that the effects would take some time to wear off naturally.

Daniel also complained that the handcuffs were too tight and asked that they be taken off. The officers declined because of "the way [he was] acting." Daniel

told the officers that his behavior was erratic because he had failed to take prescribed methadone. When Daniel again complained about the handcuffs, the officers switched them for a larger pair and double-locked them so they would not tighten. Daniel stated that the new handcuffs were more comfortable. About eight minutes after the application of the pepper spray, the officers confirmed that Daniel did in fact want to go to the hospital. The officers called an ambulance to transport Daniel, and it arrived ten minutes later.

No charges were filed against Daniel as a result of the encounter.

## B. Proceedings

In December 2007 the Lums sued the officers for use of excessive force and for unlawful entry in violation of the Alaska Constitution and AS 12.25.100, Alaska's knock and announce statute,[1] and sued NSB for negligent training and supervision. The officers moved for summary judgment, seeking dismissal of the excessive force claims on the basis of qualified immunity. The Lums opposed the motion, and oral argument was held in March 2010.

After oral argument the Lums filed several motions to supplement the evidentiary record, including consolidated appendices of exhibits, a complete transcript of Polly's deposition, and evidence showing the officers were aware that Daniel had been in a weak physical state due to back surgery. The court struck the motions and attached evidence as untimely.

In May the superior court granted partial summary judgment, ruling that the officers were entitled to qualified immunity and dismissing the excessive force claims with the exception of one for failure to give Daniel water after applying the pepper spray.

---

[1] AS 12.25.100 provides that "[a] peace officer may break into a building or vessel in which the person to be arrested is or is believed to be, if the officer is refused admittance after the officer has announced the authority and purpose of the entry."

The Lums requested reconsideration, and the officers requested reconsideration as to the one remaining claim. The court requested responses to both reconsideration motions. NSB's response to the Lums' reconsideration motion included the incident police report previously filed by the Lums with their opposition to summary judgment. The Lums challenged the admission of this evidence and moved to file rebuttal evidence. The superior court rejected their motions.

In July the superior court granted full summary judgment dismissing all of the Lums' excessive force claims on the basis of qualified immunity. The superior court later granted summary judgment dismissing the Lums' unlawful entry claims under the Alaska Constitution and A.S. 12.25.100, holding that neither could support a claim for damages.

In January 2011 the Lums filed an Alaska Civil Rule 60(b)(2) motion for relief from the summary judgment orders based on newly discovered evidence and requested that the court accept the new evidence. The superior court denied the motion and rejected the evidence, stating that it was not material and the Lums had not been diligent in submitting it. The court then dismissed the Lums' negligent training and supervision claims against NSB because the direct claims against the officers had been dismissed.

The Lums appeal the summary judgment decisions, including the decision striking submitted evidence and the denial of the Rule 60(b)(2) motion. They do not appeal the dismissal of the negligent training and supervision claim against NSB.

## III.  STANDARD OF REVIEW

"We review [a] grant of summary judgment de novo, reading the record in the light most favorable to the non-moving party and making all reasonable inferences

in its favor."[2]  "We will affirm a grant of summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."[3]

Questions involving "both state and federal [qualified] immunity are questions of law . . . subject to de novo review."[4]  "Under the de novo standard of review, we will 'apply our independent judgment to questions of law, adopting the rule of law most persuasive in light of precedent, reason, and policy.' "[5]

We will reverse an evidentiary ruling only if an error prejudicially affected a party's substantial rights.[6]  We review orders denying Rule 60(b)(2) relief for abuse of discretion.[7]  In reviewing for abuse of discretion, we ask "whether the reasons for the exercise of discretion are clearly untenable or unreasonable."[8]

## IV.  DISCUSSION

### A.  The Superior Court Did Not Err In Granting Summary Judgment Dismissing The Excessive Force Claims Based On Qualified Immunity.

#### 1.  Qualified immunity for excessive force

"In Alaska, questions concerning qualified immunity for claims of

---

[2]  *Russell ex rel. J.N. v. Virg-In*, 258 P.3d 795, 801 (Alaska 2011) (quoting *Schug v. Moore*, 233 P.3d 1114, 1116 (Alaska 2010)) (alteration in original).

[3]  *Id.* at 801-02 (quoting *Schug*, 233 P.3d at 1116) (quotation marks omitted).

[4]  *Id.* at 802 (quoting *Smith v. Stafford*, 189 P.3d 1065, 1070 (Alaska 2008)) (alteration in original).

[5]  *Id.* (quoting *Jacob v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 177 P.3d 1181, 1184 (Alaska 2008)).

[6]  *Marron v. Stromstad*, 123 P.3d 992, 998 (Alaska 2005).

[7]  *Rude v. Cook Inlet Region, Inc.*, 294 P.3d 76, 86 (Alaska 2012).

[8]  *Burke v. Maka*, 296 P.3d 976, 979-80 (Alaska 2013) (citing *Lewis v. State*, 469 P.2d 689, 695 (Alaska 1970)).

excessive force are governed both by the Fourth Amendment and by state statute."[9] "Qualified immunity is intended to protect 'all but the plainly incompetent or those who knowingly violate the law.' "[10]

"[A]n officer is entitled to qualified immunity if the officer's conduct was an objectively reasonable use of force or the officer reasonably believed that the conduct was lawful."[11] "Under the second part of the inquiry, the reasonableness of an officer's belief that his conduct was lawful depends on whether a reasonable officer would have been 'on notice' that his particular use of force would be unlawful."[12] If "the officers reasonably believed that the force they used was permissible," they are entitled to qualified immunity, "even if they were mistaken and actually used excessive force."[13]

To determine whether officers were "on notice" that their conduct was unreasonable, we "look to our own jurisdiction and other jurisdictions to see if there are any cases, laws, or regulations which would suggest that the type of action taken by the

---

[9]     *Olson v. City of Hooper Bay*, 251 P.3d 1024, 1030 (Alaska 2011) (footnote omitted); *see also* AS 11.81.370 (explaining when officer may use force); AS 12.25.070 (explaining amount of force officer is authorized to use).

[10]     *Russell ex rel. J.N.*, 258 P.3d at 802 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[11]     *Id.* at 803 (citing *Sheldon v. City of Ambler*, 178 P.3d 459, 463-64 (Alaska 2008)); *see also Olson*, 251 P.3d at 1032 ("[A] police officer in Alaska is entitled to qualified immunity in an excessive force case if the officer's conduct was objectively reasonable or the officer reasonably believed that the conduct was lawful, even if it was not.").

[12]     *Id.* (citing *Sheldon*, 178 P.3d at 463).

[13]     *Olson*, 251 P.3d at 1037 (footnote omitted).

officer is considered unlawful."[14]  Plaintiffs have the burden of showing that clearly established law gave fair notice that the officer's conduct was unlawful.[15]  Although the clearly established law does not need to arise from "an identical factual scenario," it must offer sufficiently specific guidance to give an officer clear notice of unlawful conduct.[16] "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."[17]  But in the absence of "explicit law," we also may consider whether the conduct was "so egregious, so excessive, that [the officer] should have known it was unlawful."[18]

In analyzing qualified immunity questions we "focus on the *officers'* perspectives and perceptions, as it is what reasonable officers *in their position* could have thought that is dispositive of this issue."[19]  And we also have recognized that "officers must often make quick judgments which might have unanticipated consequences, [and]

---

[14]     *Sheldon*, 178 P.3d at 466.

[15]     *Russell*, 258 P.3d at 801, 803 ("The superior court found that [plaintiff] had 'not shown the law was clearly established' . . . .") (footnote omitted); *see also Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012); *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011).

[16]     *Russell*, 258 P.3d at 804.

[17]     *City of Fairbanks v. Rice*, 20 P.3d 1097, 1109 (Alaska 2000) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).

[18]     *Sheldon*, 178 P.3d at 467.

[19]     *Olson v. City of Hooper Bay*, 251 P.3d 1024, 1030 (Alaska 2011) (quoting *Samaniego v. City of Kodiak*, 2 P.3d 78, 80 (Alaska 2000), *overruled in part by Sheldon*, 178 P.3d 459) (emphasis in original).

we must resist the urge to second guess those actions when things turn out badly."[20]

### 2. The excessive force claim does not require consideration of the allegedly unlawful entry.

In granting qualified immunity regarding the Lums' excessive force claims, the superior court cited *Samaniego v. City of Kodiak*[21] in ruling that even if the officers' initial entry were unlawful, they still were privileged to use reasonable force against Daniel once the situation escalated. The court held that regardless of the legality of the entry, the officers used reasonable force in reacting to the situation in front of them — a large, agitated man attempting to barricade himself, his wife, and an infant in the bathroom in the context of a domestic dispute call when the officers could have reasonably believed that a kidnaping or an assault was about to occur.

The Lums argue that the allegedly unlawful entry[22] and subsequent acts of force must be considered together because these episodes are so intertwined as to make it impractical to take a segmented view of the sequence of events. They argue that when the events are viewed in their entirety, the officers had fair notice that provoking the pepper spray incident by an unlawful and unannounced entry constituted excessive force. The officers respond that our reasoning in *Samaniego* controls and such incidents should be considered sequentially — they argue holding that *any* force used after an unlawful entry is *per se* excessive infringes on an officer's need to use reasonable force when required by immediate circumstances, regardless of the context.

Our *Samaniego* decision governs here. In *Samaniego* we held that even if

---

[20]   *Sheldon*, 178 P.3d at 467.

[21]   2 P.3d at 87 (holding officers had qualified immunity for excessive force even after an unlawful arrest).

[22]   *See Zinn v. State*, 656 P.2d 1206, 1207-09 (Alaska App. 1982) (holding unjustified warrantless entry was violation of Fourth Amendment).

the officer's initial arrest were illegal, "once [the arrestee] resisted [the officer's] attempt to grab her wrist, she . . . committed the additional offense of resisting arrest" and the officer was privileged to use reasonable force to arrest her for that offense.[23]  The same approach applies here — in excessive force claims we look solely at the officers' use of force in dealing with the situation before them at the time the force was applied.

The Lums attempt to distinguish *Samaniego* by noting that Daniel was in his home, raising privacy concerns absent in *Samaniego*, and that he was not placed under arrest before the officers used pepper spray.  But an unlawful arrest arguably raises liberty concerns equally as compelling as the privacy concerns raised by unlawful entry into a home.  And our reasoning in *Samaniego* is readily applicable to any situation where officers are met with dangerous circumstances, and does not rely on commission of a crime.

The Lums also point to Ninth Circuit Court of Appeals precedent holding that "where an officer intentionally or recklessly provokes a violent confrontation, if the provocation is an independent Fourth Amendment violation, [the officer] may be held liable for [an] otherwise defensive use of deadly force."[24]  They argue that even if the officers acted reasonably in spraying and handcuffing Daniel, their unlawful entry provoked the confrontation and rendered the officers liable for excessive force.[25]  We have not accepted such a theory and, as the Ninth Circuit has acknowledged, the federal

---

[23]     *Samaniego*, 2 P.3d at 87 (emphasis omitted).

[24]     *Billington v. Smith*, 292 F.3d 1177, 1188-91 (9th Cir. 2002) (citing *Alexander v. City & Cnty. of San Francisco*, 29 F.3d 1355, 1366 (9th Cir. 1994)).

[25]     *See Alexander*, 29 F.3d at 1366.

circuits have split on the validity of similar provocation-of-violence theories.[26] We recently declined to adopt the provocation theory in a qualified immunity case,[27] and we decline to do so here.

*Samaniego*'s segmented approach may not fully acknowledge that citizens might react strongly, and sometimes violently, to an unwarranted intrusion on their privacy and liberty. But "it is of great societal importance that officers be able to perform their investigatory and law enforcement duties, without fear of retribution for mistakes made in good faith."[28] Officers must be able to carry out their jobs safely and effectively, even after an unlawful entry or seizure. Because *Samaniego* is controlling, we hold that even an unlawful entry by the officers would not make the use of force per se unreasonable.

### 3. The officers are entitled to qualified immunity for their application of force.

The questions then are (1) whether the officers' use of pepper spray, use of handcuffs, and actions after the altercation were reasonable; and (2) if the officers' actions were unreasonable, whether the officers were on notice their conduct constituted excessive force. We have stated that when analyzing multiple applications of nondeadly

---

[26]    *Billington*, 292 F.3d at 1186-88 (comparing *Allen v. Muskogee, Okla.*, 119 F.3d 837 (10th Cir. 1997) with *Gardner v. Buerger*, 82 F.3d 248, 254 (8th Cir. 1996); *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992); *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991)); *see also Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 406 (6th Cir. 2007) (rejecting *Billington* in favor of a segmented analysis).

[27]    *See Maness v. Daily*, 307 P.3d 894, 902 (Alaska 2013).

[28]    *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 585 (Alaska 2007) (quotation marks omitted).

force, a court may consider each sequential application of force separately.[29] The superior court considered the officers' actions separately; they therefore are considered in turn.

Officers are permitted to use pepper spray when an individual is "resisting arrest or refusing police requests."[30] Pepper spray is "of limited intrusiveness" and is "designed to disable a suspect without causing permanent physical injury."[31] Pepper spray generally is considered reasonable for bringing a person under control, but not when the person already has surrendered and been rendered helpless.[32] In *Russell ex rel. J.N. v. Virg-In* we noted that the use of a taser, another non-deadly disabling device, is reasonable against a person actively resisting or not cooperating with the police, but not against nonviolent, nonthreatening subjects.[33] Because Daniel resisted the officers' commands to come out of the bathroom and their attempts to ensure the other family members' safety, we affirm the superior court's holding that the officers were entitled to qualified immunity for their reasonable use of pepper spray.

The use of handcuffs is reasonable "to control the scene and protect

---

[29]    *Russell ex rel. J.N. v. Virg-In*, 258 P.3d 795, 807 n.56 (Alaska 2011); *Olson v. City of Hooper Bay*, 251 P.3d 1024, 1036 (Alaska 2011).

[30]    *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002).

[31]    *Id.* (quoting *Gainor v. Douglas Cnty.*, 59 F.Supp.2d 1259, 1287 (N.D. Ga. 1998)).

[32]    *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000); *compare Jackson v. City of Bremerton*, 268 F.3d 646, 652-53 (9th Cir. 2001) (holding use of spray not excessive force when plaintiff yelled and swore at officers and attempted to interfere with arrests), *with Headwaters Forest Def. v. Cnty. of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002) (holding use of spray was excessive force when used on nonviolent protesters who were easily moved by police and did not threaten or harm officers).

[33]    *Russell*, 258 P.3d at 808 n.63.

[officer] safety" and is improper only when "suspects are cooperative and officers have no objective concerns for safety."[34] Here the officers handcuffed Daniel due to his "erratic behavior" and because he had been actively resisting them moments prior. The Ninth Circuit has held that prolonged use of handcuffs that are too tight, resulting in pain or injury, may be unreasonable,[35] but here the officers switched to looser handcuffs after Daniel complained and when they believed it was safe to do so. We therefore affirm the superior court's holding that the officers were entitled to qualified immunity for their reasonable use of handcuffs.

The Lums argue that the officers' failure to provide water to ameliorate the effects of the pepper spray violated NSB Police Department guidelines and was unreasonable. But the NSB Police Department guidelines state that the subject *may* be allowed cool water to rinse eyes. The officers wiped Daniel's face, brought him into the wind, and reassured him that the effects would wear off naturally. The officers' conduct was reasonable and certainly does not violate clearly established law, unlike that of the officers in *Headwaters Forest Defense v. County of Humboldt* who unreasonably refused to ameliorate pepper spray effects to coerce protesters to abandon their protest.[36] We therefore affirm the superior court's holding that the officers are entitled to qualified immunity for their amelioration of the pepper spray's effects.

---

[34] *El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 459-60 (8th Cir. 2011); *see also Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty.*, 673 F.3d 333, 340 (4th Cir. 2012) (stating use of handcuffs generally is a reasonable standard procedure during domestic disturbance calls as officers must ensure no threat exists against them or anyone in home).

[35] *Meredith v. Erath*, 342 F.3d 1057, 1063 (9th Cir. 2003); *LaLonde*, 204 F.3d at 960.

[36] 276 F.3d at 1131.

Finally, the Lums argue that the officers erred in failing to call for an ambulance immediately after Daniel complained of a possible heart attack. NSB Police Department guidelines instruct that medical attention should be given for pepper spray if the subject requests it or if symptoms persist past 45 minutes; the officers called an ambulance about eight minutes after spraying Daniel, and it arrived ten minutes later. Because Daniel variously complained of a panic attack, heart attack, "freaking out," and hyperventilating during that time, the officers reasonably could have concluded that Daniel did not immediately need an ambulance to treat an ongoing heart attack, and because they called for an ambulance when it was clear that Daniel wanted one, we affirm the superior court's holding that the officers are entitled to qualified immunity for their response to Daniel's request for an ambulance.

We therefore affirm the superior court's summary judgment granting the officers qualified immunity for all of the Lums' excessive force claims.

## B. The Superior Court Did Not Err By Granting Summary Judgment On The Stated Unlawful Entry Claims, But It Should Have Considered The Trespass And Invasion Of Privacy Claims Raised In The Summary Judgment Proceedings.

The superior court granted summary judgment for the officers on the Lums' claims for unlawful entry in violation of AS 12.25.100 and of article 1, sections 14 (unreasonable search and seizure) and 22 (right to privacy) of the Alaska Constitution. The court declined to address the unlawful entry as an excessive force claim and held that even if the officers' entry were unlawful, the constitutional provisions and AS 12.25.100 did not provide a cause of action for damages. The superior court also declined to address the common law trespass and invasion of privacy claims raised by the Lums for the first time in their opposition to summary judgment. Because the superior court held that the Lums did not raise a valid unlawful entry claim, it did not reach the question of whether the officers had qualified immunity. On appeal the Lums

contest these determinations, and also claim that the officers did not have qualified immunity because their entry was pretextual.[37]

First, the superior court was correct to separate the unlawful entry claims from the excessive force claims addressed above. The Lums fail to point to any case where an unlawful entry was considered under an excessive force analysis. Although both claims have their roots in the Fourth Amendment and article 1, section 14 of the Alaska Constitution, they are substantively different issues with substantively different governing standards.[38]

Next, the superior court was correct in rejecting the Lums' constitutional tort claim. We have stated that we "will not allow a constitutional claim for damages, except in cases of flagrant constitutional violations where little or no alternative remedies are available."[39] The alternative remedies do not need to provide the same level of protection, "may include federal remedies," "need not be an exact match," and are

---

[37]    *See Samaniego v. City of Kodiak*, 2 P.3d 78, 87 (Alaska 2000) (noting that qualified immunity to use force in making arrest would be nullified if basis for arrest were pretextual). Whether an entry was pretextual affects the availability of a qualified immunity defense, not the viability of a cause of action. *See Crawford v. Kemp*, 139 P.3d 1249, 1258-59 (Alaska 2006). Because we hold that the Lums do not have a cause of action for their unlawful entry claims and we remand the Lums' common law trespass and invasion of privacy claims, we do not need to decide whether the officers enjoy qualified immunity for those claims. Therefore, we do not need to decide whether the officers' entry was pretextual.

[38]    *See Graham v. Connor*, 490 U.S. 386, 394 (1989) (stating constitutional violations should be addressed "by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard").

[39]    *Larson v. State, Dep't of Corr.*, 284 P.3d 1, 10 n.32 (Alaska 2012) (quoting *Lowell v. Hayes*, 117 P.3d 745, 753 (Alaska 2005)).

alternatives even if no longer procedurally available.[40]  Here the Lums could have brought a common law trespass claim or a federal civil rights action under 42 U.S.C. § 1983, and these alternative remedies preclude a suit for damages under the Alaska Constitution.[41]

Finally, the superior court was correct in ruling that the Lums may not recover tort damages under AS 12.25.100. Alaska Statute 12.25.100, in conjunction with AS 12.35.040, establishes the procedure for police forcing entry when executing a warrant.[42]  But as the superior court pointed out, the remedy for a violation of the statute is exclusion of illegally obtained evidence,[43] not a private tort claim for damages.[44]

The Lums raised trespass and invasion of privacy claims for the first time in their opposition to summary judgment on the unlawful entry claims.  The Lums did not seek leave to amend their complaint to include these claims, and the superior court did not consider them in granting summary judgment on the Lums' unlawful entry claims.  The Lums argue that these claims were sufficiently raised in their complaint through their claim that the officers invaded the Lums' privacy by unlawfully entering their home.

We have held that pleadings adequately raise a claim if they provide the

---

[40]     *State, Dep't of Corr. v. Heisey*, 271 P.3d 1082, 1096-98 (Alaska 2012).

[41]     *See, e.g.*, *Hertz v. Beach*, 211 P.3d 668, 677 n.12 (Alaska 2009) (holding medical malpractice and federal constitutional law provided adequate remedies to redress inadequate dental treatment and therefore precluded state constitutional claims).

[42]     *Davis v. State*, 525 P.2d 541, 543 (Alaska 1974).

[43]     *Berumen v. State*, 182 P.3d 635, 642 (Alaska App. 2008).

[44]     *See Peter v. Schumacher Enters., Inc*, 22 P.3d 481, 489 (Alaska 2001) (laying out test for determining whether statute provides for private cause of action).

opponent fair notice of the nature of the case.[45]  "[P]leadings are to be liberally construed, with the goal being to achieve substantial justice."[46]  In *Gamble v. Northstore Partnership* we held that affirmative defenses raised for the first time in an opposition to summary judgment were sufficiently pled because other defenses raised in the party's answer "invoke[d] some of the same concerns in more general terms" as those raised in the opposition to summary judgment and thus the opposing party had fair notice of the litigation's nature.[47]  Here the Lums' trespass and invasion of privacy claims implicate the same privacy concerns arising from the officers' warrantless entry as the Lums' other unlawful entry claims, and therefore put the officers on fair notice of the general type of litigation involved.  Although these claims were articulated very late in the proceedings, in light of our policy preference that decisions be based on the merits rather than on pleading technicalities,[48] we remand this case to the superior court for further proceedings on these claims.

### C. It Was Not Reversible Error To Strike Submitted Evidence From The Record.

The Lums challenge the superior court's rejection of their attempts to file additional evidence after briefing and oral argument on summary judgment for qualified immunity.  They argue that the court should have imposed lesser sanctions before

---

[45]  *See Gamble v. Northstore P'ship*, 907 P.2d 477, 482 (Alaska 1995).

[46]  *Id.*

[47]  *Id.* at 483.  "The standards governing the pleading of affirmative defenses under Rule 8(c) are no different than the liberal approach taken for all pleadings."  *Id.* at 482 (citing 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1274, at 455 (1990)).

[48]  *Sea Hawk Seafoods, Inc. v. State*, 215 P.3d 333, 340 (Alaska 2009) (citing *Gamble*, 907 P.2d at 483).

striking the evidence[49] and that the evidence was timely because it was offered before the final qualified immunity order was issued.

The officers respond that the Lums fail to make the required showing that the decision to exclude the evidence prejudicially affected their substantial rights.[50] The officers also argue that the Lums did not comply with timeliness requirements when submitting the evidence and that if they needed additional time to obtain evidence, they should have asked for it under Rule 56(f),[51] which requires a showing of why the original time frame was inadequate.[52] The challenged rulings are addressed in turn.

### 1. Evidence of Daniel's fear of Officer Grimes and Officer Grimes's knowledge of Daniel's medical condition

The Lums argue that the superior court erred by striking as untimely their submission of supplemental evidence in an opposition to summary judgment. The evidence was offered after oral argument, but before the superior court issued its decision on qualified immunity. The Lums argue the proffered evidence showing that Officer Grimes knew about Daniel's back injury rebutted assertions that Daniel was physically threatening to the officers at the time of their confrontation. The Lums also argue that

---

[49]     *See Maines v. Kenworth Alaska, Inc.*, 155 P.3d 318, 326 (Alaska 2007) (citing *Arbelovsky v. Ebasco Servs., Inc.*, 922 P.2d 225, 227 (Alaska 1996)) (holding courts must ordinarily impose lesser sanctions if available before striking evidence).

[50]     *See Barton v. N. Slope Borough Sch. Dist.*, 268 P.3d 346, 353 (Alaska 2012) (citing *Noffke v. Perez*, 178 P.3d 1141, 1147 (Alaska 2008)); *Marron v. Stromstad*, 123 P.3d 992, 998 (Alaska 2005) (citing *Getchell v. Lodge*, 65 P.3d 50, 53 (Alaska 2003)).

[51]     *See Peterson v. State, Dep't of Natural Res.*, 236 P.3d 355, 362 n.12 (Alaska 2010).

[52]     *Mat-Su Reg'l Med. Ctr., LLC v. Burkhead*, 225 P.3d 1097, 1104-05 (Alaska 2010).

the evidence of prior encounters with police corroborated Daniel's testimony that he believed officers had shot at him during a previous incident, which helped explain his fearful and agitated reaction upon seeing the officers in his house.

But Officer Grimes's putative knowledge of Daniel's back problems and Daniel's putative fearful reaction to the officers' presence do not negate the objective reasonableness of the officers' conduct in taking control of a potentially dangerous situation in which Daniel was resisting the officers and barricading himself and his family in the bathroom. Rejection of the evidence was not prejudicial because the evidence would not have substantially affected the superior court's decision.[53]

### 2.    Polly Lum's deposition

The superior court struck as untimely the Lums' filing of Polly's entire deposition to authenticate the portions of her testimony already submitted and to "complete the record." The deposition was taken more than six months before the Lums' summary judgment opposition, but the evidence was offered three months after the deadline for the summary judgment opposition with no explanation for the delay. The Lums fail to explain why the transcript was pertinent or how its exclusion was prejudicial in any manner. We therefore affirm the superior court's decision to strike this evidence.

### 3.    Consolidated appendices

The superior court struck as untimely consolidated appendices submitted after the deadline for summary judgment opposition. The appendices consisted of deposition testimony from relevant parties, much of which was already part of the record. The Lums argue that the appendices should have been admitted but do not explain why they delayed in filing them, how the excluded evidence was relevant, or how its

---

[53]    *See Barton*, 268 P.3d at 353-55 (holding error in evidentiary decision harmless as it would not have substantially affected outcome of case).

exclusion was prejudicial. We therefore affirm the superior court's decision to strike this evidence.

### 4. Rebuttal evidence

The superior court also struck the Lums' submission of "rebuttal evidence" in response to the officers' submission of a police officer incident report attached to the NSB's opposition to the Lums' motion for reconsideration of the qualified immunity issue. The Lums argue that the incident report was inadmissible hearsay because it contains officers' statements that Polly appeared to be in fear and that Daniel appeared to be withdrawing from methadone. The Lums requested an opportunity to file rebuttal evidence consisting of Polly's affidavit describing the domestic dispute incident and the layout of the Lum residence, along with a video of the home which the Lums argued showed that the officers could not have seen Polly from their position.

But the incident report already was in the record because the Lums themselves previously had filed it. And the Lums fail to explain how the new evidence rebutting the report would have affected the superior court's determination on qualified immunity. Further, the Lums cannot use reconsideration motions for "presentation of additional evidence on the merits" of the original motion but must argue based on the existing record.[54] For these reasons, we affirm the superior court's decision to strike this evidence.

### D. The Superior Court Did Not Abuse Its Discretion By Denying The Lums' Rule 60(b)(2) Motion.

In January 2011 the Lums filed a Rule 60(b)(2) motion for relief from the summary judgment decisions on excessive force and unlawful entry on the basis of newly discovered evidence. The Lums asked the court to accept new evidence of

---

[54] *Neal & Co. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.*, 895 P.2d 497, 506 (Alaska 1995).

recorded statements given by Sgt. Gutierrez and Officer Grimes during an Alaska State Trooper investigation in 2007, less than three months after the initial incident. The Lums argued that the evidence was newly discovered because they had not received a copy of it from NSB until after the court had ruled on all summary judgment motions. They argued that statements made in the interviews contradicted deposition testimony and showed that Daniel had accused Officer Grimes of dealing methamphetamine in a previous encounter, supporting their assertion that the entry was pretextual.

The superior court denied the motion, concluding that the evidence did not justify relief under Rule 60(b)(2) and that relaxation under Rule 94[55] was not warranted. The court stated that the Lums had failed to show how the evidence would change the summary judgment decision, NSB's error in not producing the reports sooner was harmless because the Lums were aware of the investigation, and the evidence was not material because it did not support the claim that Officer Grimes had been accused of dealing methamphetamine prior to the incident.

Motions for relief from judgment under Rule 60(b)(2) are reviewed for abuse of discretion, and the party seeking relief must show, among other things, that the evidence would probably change the result and could not have been discovered earlier by due diligence.[56] Because the Lums did not explain their failure to discover this transcript even though they were aware of the investigation and failed to show how the evidence would have changed the summary judgment decisions, we uphold the superior court's denial of this motion.

---

[55]  Rule 94 provides that the civil rules "may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice."

[56]  *Babinec v. Yabuki*, 799 P.2d 1325, 1332-33 (Alaska 1990).

# V.    CONCLUSION

We AFFIRM the superior court's evidentiary rulings and grant of summary judgment on the excessive force and unlawful entry claims. We AFFIRM the superior court's denial of the Lums' Rule 60(b)(2) motion. We REMAND for further proceedings on the Lums' late-raised trespass and invasion of privacy claims.